Eastern District
    *May* 1831.
ARMOR
*vs.*
HIS CREDITORS.

*ARMOR vs. HIS CREDITORS.*

**APPEAL FROM THE COURT OF THE FIRST DISTRICT.**

A creditor of several debtors, *in solido,* who has received a dividend from the estate of one of them, can only claim from the estate of the others the amount due, after deducting the payment made. And, though he may have proved his debt against each estate, for the whole amount, if he subsequently receives a portion of it, from the estate of one of the debtors, his rights on the estate of the others are estimated in relation to the balance due after deducting *that payment*, not by the amount of his original debt.

The homologation of the tableau filed by the syndics was opposed by certain creditors of the insolvent, because the Bank of the United States, and certain other banks, were placed on the tableau as creditors for the full amount of their debts, alleged to have been due them by the insolvent at the time of his failure, when said institutions had since received from the estates of Morgan, Dorsey & Co. and of William Kenner & Co. (who were debtors for the same debts to said institutions, with the insolvent Armor) dividends to a large amount.

*Maybin,* for the opposing creditors, contended—that those institutions could only receive the dividend from the syndics of Armor's estate, *on the balance of their debts,* after deducting the amounts received thereon by them, from the estates of Morgan Dorsey & Co. and William Kenner & Co. The court overruled the opposition, and the opposing creditors appealed.

*Peirce,* for appellees.

*Porter, J.,* delivered the opinion of the court.

The tableau of distribution filed by the syndics, in this case, was opposed in the court of the first instance, because certain creditors were placed thereon, for the full amount of the debt due by the insolvent, at the time of his failure, though since that period they have received from the syndics of Morgan Dorsey & Co. and of William Kenner &

Co., who were also debtors for the same debts, certain dividends, which greatly diminishes the amount these creditors can now claim from the estate of Armor.

The court of the first instance, after hearing counsel on this opposition, directed it to be overruled, and the opposing creditors appealed.

The question is of considerable importance, and the decision we are about to give, will have a frequent application in the settlement of insolvents' estates. The case has been carefully argued.

Before submitting our views on the merits of this controversy, it will be proper to pass in review the authorities read and referred to, on the argument.

The English rule is thus stated by Eden, in his treatise on bankruptcy :

" The holder of a bill or note is entitled to prove his debt, under a commission against any of the parties to it, and to receive a dividend from each, on his whole debt, provided he does not, on the whole, receive more than twenty shillings in the pound."

" But there is a distinction in this case, where the creditor applies to *prove* his debt, *after* having received a part, and where he applies to prove, *previous* to having received any payment or composition: for, if the creditor, at the time of proving, has received any part of the bill, he can only prove for so much as remains ; but, if after having proved for the whole, he receives a part of the bill from any of the persons liable to pay it, he is entitled to a dividend upon the whole, provided it does not exceed twenty shillings in the pound, upon such part as remains due. This was formerly holden otherwise ; but it is now completely settled."—— *Eden's Bankruptcy*, 155.—*Chitty on Bills* (*Ed.* 1830) 460, 461.

In France, previous to the enactment of the Code of Commerce, the question now presented to the court, was a

U2

subject of considerable controversy.    The weight of authority appears in favour of the position assumed by the appellants, that the creditor could only present himself against one of the insolvent estates, for the balance due, after deducting that which he had received from another similarly circumstanced ; of that opinion was *Dupuy :e la Serra, Pothier, Bontarie* and *Jousse.—See Dupuy de la Serra, art. Des Lettres de Change, chap.* 16, *No.* 19 *et suivans, page* 60.—*Pothier, Contrat de Change, chap.* 5, *No.* 159.— *Bontarie, sur l'art.* 12, *Titre des Lettres de Change ; et Jousse, sur l'art.* 33, *même titre.*

Emerigon was of a contrary opinion, and cites a decision of the Parliament of Aix, in support of the opposite doctrine, which was afterwards reversed, on an appeal to the Council of State.    By a singular coincidence, the Parliament of Paris had decided a case similarly circumstanced, directly contrary to that of Aix, on the same day.—*Emerigon, Contrat à la Grosse, chap.* 10, *sec.* 3, *vol.* —, *p.* —. *Boully Paty des Faillites et Banqueroutes, vol.* 2, *p.* 41 *à* 43.

The 534th article of the Code of Commerce terminated these discussions in France, by declaring that the creditor, bearer of obligations in *solido,* between the insolvent, and the co-obligers, who were also insolvent, participated in the distribution of all the estates, until he was fully paid.

In Scotland, it is shewn that a different rule from that established in England, prevails.    Bell states that the date of sequestration is the point of time at which each creditor, holding joint securities, is entitled to estimate the amount of the debt to be claimed.—*2d Bell's Comm.* 338.

Thompson, a writer on the laws of that country, after alluding to the English rule, and its opposition to that of Scotland, remarks : " That the adoption of the English rule may often lead to capricious results ; for example, by making the amount of the dividend obtained from one estate, depend on the accident of the creditor not ranking on it

first, but ranking first on another estate, on which a dividend has been declared, is unquestionable. Nor can it be denied that a dividend drawn from one estate, for the full sum ranked, though it may satisfy on it, does not satisfy the separate security held against another estate. But it may be doubted (he continues,) whether this dividend should not be considered at least as a partial payment to account of the *debt;* and, if the debt has been thus diminished by the receipt of a dividend from one estate, before it is ranked on another, it does not appear how it can still be ranked for the full sum, as if there had been no such payment. The security which is still held against the separate estate, would rather seem to depend on the actual amount of the debt, so as to diminish in proportion as the debt is. diminished."— *Thompson on Bills of Exchange,* 818.

In Spain, the practice appears to be to permit the creditor to prove against each estate, for the full amount of the creditor's claim, unaffected by payments from a co-debtor's estate, which is insolvent.—*Salgado Lib. part.* 1, *chap.* 17.

The course to be pursued, in matters of this kind, does not appear to have received a judicial determination in the United States, and the citations already made, rather shew how unsettled the law is in Europe, than exhibit a preponderance of authority, on which the court could rest its decision. The case presents itself without any influence from the opinions of others. We feel at liberty to adopt that doctrine which we think will best promote equity among creditors of insolvent estates.

It was urged, in argument, that the rights of the parties were fixed by the bankruptcy, and that they could not be affected by matters subsequent thereto. This position, we think, must be admitted with a good deal of limitation. To many purposes they, no doubt, are fixed ; but that they are fixed to such an extent as to enable each creditor, at the time of insolvency, to be paid out of the estate, and in pro-

*Margin:*
Eastern District, *May* 1831.

ARMOR
*vs.*
HIS DREDITORS

A creditor of several debtors *in solido,* who had received a dividend from the estate of one of them, can only claim from the estate of the others the amount due, after deducting the payment made. And tho' he may have proved his debt against each estate, for the whole amount, if he subsequently receives a portion of it from the estate of one of the debtors, his rights on the estate of the others are estimated in relation to the balance due after deducting *that payment,* not by the amount of his original debt.

portion to the whole amount then due to him, may be well doubted; a payment by a co-debtor of all the debt, would destroy it at once; and why a payment of a part should not diminish it *pro tanto*, we will next examine.

If a payment had been made previous to the bankruptcy, it is admitted, on all hands, that the creditor could only claim to be placed on the *bilan*, for the balance due, and could only receive a dividend in proportion to that balance. If a payment made after, does not produce the same effect, it must be because the creditor, being placed there, gives him a right to demand his proportion of the whole amount for which he is so placed.

It is not understood by us that, according to our law and practice, any such consequence follows the placing of the creditor on the *bilan* by the insolvent. As between them it may be so, but any other creditor has a right to dispute the existence, and the amount of another's claim, up to the marshalling made by the syndics, on the tableau of distribution, and until that tableau is homologated by the court. The claim of a creditor cannot be considered as fixed, until the power of the other creditors to objet to it, terminates.

If there were enough to pay all the creditors, as sometimes, though very rarely happens, no one could receive more than the balance due to him, after deducting that which he had received between the insolvency and the distribution. Why he should not be compelled to allow this credit, when he cannot receive the whole amount, must be, because he has a right to claim for more than is due, to enable him to get the whole of his debt paid.

This might be equitable enough, if there were no person concerned but the insolvent and the particular creditor, if others were not affected by it. But we do not see why a creditor, so circumstanced, should be allowed to state what is contrary to the truth, to enable him to recover his whole debt, when other creditors are not permitted to resort to fictions, to obtain the same result. The bankrupt, if his estate

was adequate to the payment of all demands against it, could claim the benefit of any credit which might arise from moneys previously received by the creditor. Where it is not sufficient to discharge the whole, the right of other creditors to obtain the benefit of such payments, appears to us as strong, as that of the insolvent in the case just put.

Our laws contemplate an equal distribution of the estate of the insolvent, among the chirographary creditors, after mortgage and privilege debts are paid. That equality would be destroyed if any one received more than his proportion of the sum really due to him. By deducting what has been received from the original debt at any time previous to the tableau of distribution, we have a simple mode of ascertaining what is due to the creditor,—one which is consonant with truth, and analogous to the mode pursued in liquidating debts in all other cases. The contrary rule seems to us founded on assumptions purely gratuitous and arbitrary, and working a great injustice to other creditors. The leading idea offered in support of it, is, that he has a right to prove against all, until his whole debt is paid. This right, we think, ought to be, and is, subordinate to the rights of the other creditors of the insolvent's estate. No satisfactory distinction presents itself to our minds, between a payment made before and after insolvency: we see no reason why the one should have less effect than the other.

It is therefore ordered, adjudged, and decreed, that the judgment of the District Court be annulled, avoided, and reversed. And it is further ordered, that the opposition filed in this case be sustained, and that the cause be remanded for further proceedings, the appellee paying the costs of this appeal.