JAMES J. MINOR et als., Appellants, v. JOHN H. CARDWELL et als., Respondents.

*Conflict of Laws—Husband and Wife—Domicil.*—Personal property is governed by the law of the domicil of the owner, and the law changes with the change of domicil. Where a wife, living in Kentucky with her husband, owned slaves, which, by the law of that State, were taken to be held as real estate, and were not subject to attachment or levy under execution for any debts of the husband, yet upon the removal of the parties to this State, bringing the slaves with them, the rights of the husband over the slaves will be determined by the laws of this State.

*Appeal from Daviess Circuit Court.*

*H. M. & A. H. Vories* and *S. A. Richardson,* for appellants.

The statutes of Kentucky, relied on by the plaintiffs, and which were read in evidence, were only intended to cause the slaves of a married woman, owned by her at the time of her marriage, or which came to her by gift, devise, &c., during coverture, to be held and taken to be real estate for certain specific purposes ; that is, " that no slave shall be liable to the debts of her husband, or be attached, levied on, or sold for his debts," &c. It was not intended that the wife should hold the property as separate property, no title vesting in the husband, but merely that the property should not be sold for his debts, and was therefore only an exemption law, and could have no extra-territorial force or effect. Hence, when the slaves were brought to Missouri, they were subject to and governed by the laws of Missouri, and were only exempt from levy and sale for the husband's debts contracted before the marriage, or before the wife came into the possession of the slaves. (Johnson et al. v. Jones, 12 B. Mon. 326 ; Cox v. Coleman's Adm'r, 13 id. 451 ; 9 id. 500.)

The laws of Kentucky clearly recognize a life estate in the husband in the slaves of the wife. This estate is only exempted from levy and sale during the life of the wife. This is clearly an exemption of an acknowledged property in the husband from sale, for and during the life of his wife. This exemption certainly could have no force in Missouri ; therefore such life estate might be sold for the husband's debts contracted after the marriage, and after said slaves came to their possession.

It is admitted that the law of the place where a marriage takes place governs the right or title to property coming to the possession of the parties while residing there, and that whatever title is acquired at said place cannot be divested by the parties changing their domicil. But there is a marked difference between a right or the title to property, and the exemption of property from execution for certain pur-

poses. (Sto. Confl. Laws, § 571; Smith' v. Healey, 4 Conn. 49; Woodbridge v. Wright, 3 Conn. 523; Smith v. Spinola, 2 Johns. 196; Sicard v. Whale, 11 Johns. 194.)

If the laws of Kentucky fix the character of the property, and the rights thereto, and are not merely laws of exemption, then the slaves in question must be considered as real property in this State, as they are in Kentucky; and it is well settled, that as to real property, the rule as to the law of the dómicil does not apply, but that such property is governed by the law of the place where it is situated. (Sto. Confl. Laws, § 436 *et seq.*, § 187 and note 3, §§ 167–8; Depas v. Mayo, 11 Mo. 314.)

With this view of the case, the husband's life estate could be sold to satisfy debts by him contracted after the negroes were reduced to possession. (R. C. 754; Cunningham v. Gray, 20 Mo. 170; Harvey v. Wickham, 23 Mo. 112; Barbee v. Wymer, 27 Mo. 140.)

The rule as to the law of the domicil does not prevail wherever the right asserted by said law is prohibited by the law of the place where it is to be enforced, or where it is against the policy of, or indirectly repudiated by, the laws of the place where it is to be enforced. (Sto. Confl. Laws, §§ 174–5, *et seq.*)

The statute of Missouri does *directly* repudiate the law of Kentucky, in declaring that slaves shall be personal property, and, in fixing their course of descent, inconsistent with the provisions of said law.

If the slaves in question were not the separate property of the wife, by virtue of the law read in evidence, an interest therein vested in the husband upon the marriage. If so, it was subject to sale by our laws for his debts. (Sallee v. Chandler, 26 Mo. 124.)

To ascertain whether the law of Kentucky makes the slaves the separate property of the wife, we should take the decisions and interpretation given to said law by the courts of Kentucky, by which it will be seen that the property is vested in the husband, subject to the provisions of said law, and

was not separate property belonging to the wife. (Charlotte v. Chouteau, 25 Mo. 465; Johnson & w. v. Jones, 12 B. Mon. 326.)

WAGNER, Judge, delivered the opinion of the court.

The decision of this case rests on one single point. By the statute of Kentucky, of 1845–6, entitled "An act to further protect the rights of married women," it was provided that the slave or slaves of a married woman should, after the passage of the act in that commonwealth, be held and taken to be real estate, in so far that no slave or slaves, or the increase thereof, which such married woman should have at the time of her marriage, or which should come, descend, or be devised to her during her coverture, should be liable for the debts of the husband, or be attached, levied on and sold for his debts or liabilities of any sort or kind, nor should the husband's life estate in the slaves of the wife, the wife living, be levied on and sold to pay such debts and liabilities.

By our law, slaves were personal property, and slaves belonging to the wife became the absolute property of the husband, and were liable to be levied on and sold under execution, in like manner as other personal property, for his debts. The question is, whether slaves which were held by a married woman in Kentucky, under the operation of the law of 1845–6, and which were invested with the character of real estate by local law, and exempt from levy and sale for the husband's debts, are to be considered as held in the same manner, and with like conditions and exemptions, when brought by their owner to this State? In other words, after they are transferred to our jurisdiction by the voluntary act of the owner, is their status to be determined by the laws of Kentucky or Missouri?

It may be stated as a general rule, that laws have no force by their own proper vigor beyond the Territory or State by which they are made; excepting, for some purposes, the high seas or lands over which no State claims jurisdiction. Beyond or outside of this limit they can claim no sanction;

obedience cannot be compelled, nor disobedience punished. Mr. Justice Story lays down the doctrine, that the laws of every State affect, and bind directly, all property, whether real or personal, within its territory; and all persons who are resident within it, whether natural-born subjects or aliens; and also all contracts made, and acts done within it. (Sto. Confl. Laws, § 18.) No State can, by its own laws, directly affect or bind property out of its own territory, or bind persons not resident therein, whether they are natural-born subjects or others. This is a natural and necessary consequence of the foregoing proposition; for it would be wholly incompatible with the independent equality and exclusiveness of the sovereignty of nations, that any one nation should be at liberty to regulate either persons or things not within its own territory; and hence it follows, as a necessary corollary, that whatever force and obligation the laws of one country have in another, depend solely upon the laws and municipal regulations of the latter; that is to say, upon its own proper jurisprudence and polity, and upon its own express or tacit consent. (Sto. § 23.)

But, by the universal practice of civilized countries, by the comity of nations, the laws of one will be recognized and executed in another, where the rights of individuals are concerned. It is so with cases of contracts made in foreign countries; and courts of justice always expound and execute them according to the laws of the place in which they were made, provided they do not contravene the express municipal regulations, or are not repugnant to the policy of their own country. (Bank of Augusta v. Earle, 13 Pet. 519, 589, Taney, C. J.)

This comity is the purely voluntary act of the nation or State, and is totally inadmissible when contrary to its policy, or prejudicial to its interests. In Olivier v. Townes (14 Mart. 93–102), a contest arose in regard to the sale and transfer of a ship by a resident of Virginia, the ship at the time of the sale being locally in New Orleans; and before there was any delivery, she was attached by the creditors of the vendor.

By the laws of Virginia, where the vendor lived and the sale took place, no delivery was necessary to complete the sale; but by the laws of Louisiana, where the ship, the subject matter of the contract, was locally situated, the sale was invalid unless accompanied with delivery. It was therefore a case of conflict of rights between the creditor and the purchaser. It was contended that, by the laws of all civilized countries, the alienation of movable property must be determined according to the laws, rules and regulations in force where the owner's domicil is situated. But Porter, Judge, in an opinion of great learning and ability, combatted the position, and declared that where there was a clash or conflict in such a case, the comity must give way, and the laws of the place where the property may be must prevail. He concludes: " However anxious we may be to extend courtesy and afford protection to the people of other countries, who may come themselves or send their property within our jurisdiction, we cannot indulge our feelings so far as to give a decision that would let in such consequences as we have just spoken of. It would be giving the foreign purchaser an advantage which the resident has not; and that, frequently, at the expense of the latter. This, in the language of the law, we think would be a great inconvenience to the citizens of the State, and therefore we cannot sanction it."

A testator, having his domicil in the State of Mississippi, died possessed of slaves there, and directed in his will that if either of his two sons, to whom he bequeathed his property, should die " without a lawful heir," his part, real and personal, should go to the survivor. Each son received his portion, and one removed with his slaves into Louisiana, and died " without a lawful heir." It was determined that, alalthough by the law of the testator's domicil, the survivor might have had a title to such slaves, yet, as by the law of Louisiana testamentary substitutions were prohibited, the survivor's claim could not be enforced in the latter State. (Harper v. Stanbrough, 2 La. 377 ; Harper v. Lee, id. 382.) And in Mahorner v. Howe (9 Sm. & M. 247), a person

domiciled in Virginia, by his last will and testament, made and executed in that State, directed that certain of his slaves, then being in Mississippi, should be emancipated and sent to Africa. By the law of Virginia, such a disposition was valid; by the law of Mississippi it was not. The courts of the latter State held the will void and inoperative as to the slaves in that State, because it contravened the public policy of the State, as declared by an express statute, and was not embraced in the general rule of comity regulating the law of the domicil.

The principle is so well established that it will hardly be questioned by any one, that personal or movable property is governed by the law of the domicil of the owner, wherever it may be situated, and this law of course changes with his change of domicil. To say that the slaves were real estate here, is to import the law of Kentucky into this State, and make it operate *ex proprio vigore* in opposition to the well settled rules of our own law. The case does not come within the meaning of the terms or the principles where the *lex loci contractus* governs. It is an attempt to bring property within our jurisdiction, and hold it by virtue of a foreign law, in a manner and by a tenure different from what is recognized by our own rules and regulations.

It is competent for a State, by legislative enactment, to declare that carriages, or other personal property, shall be deemed to be of the nature of real estate, and so held, and shall be devised and descend in the same way. But if that property was brought from such State into our territory, would our courts be bound, or even warranted, in making a distinction between that and other property of a like kind, to the detriment of the interests of our citizens?

It is believed the comity of nations has never been carried to this extent. There is nothing to distinguish the law by which property in slaves was formerly owned in this country from that which was applicable to other property. Slaves being regarded by our law as merely personal property, as soon as they were brought here, they were remitted to that

condition, without considering the nature or character of the laws by which they were held in the country whence they came.

The judgment is reversed and the cause remanded. Judge Holmes concurs; Judge Lovelace absent.