## The Chicago and Iowa Railroad Company

*v.*

## Robert Hopkins *et al.* Exrs., etc.

1. **Right of way**—*right to damages to land not taken.* On the condemnation of land for a right of way for a railroad, the evidence will be confined to the particular lands described in the petition, unless the defendant files a cross-petition setting up that he is the owner of other ground not described in the original petition, which will be damaged, and makes claim to have the damages thereto likewise assessed.

2. **Same**—*what is a cross-petition for damages to other lands.* Where the defendant files a pleading, in which he says "he is the owner of the lands mentioned in the petition, and other lands contiguous thereto, making a farm of 730 acres in a compact body; that the railroad company takes about 12 acres out of his farm, dividing wood, water and timber from the balance of the farm; that the land thus taken is of the value of $150 per acre, and the damage by reason of cutting the farm is $10,000, and he respectfully asks that his compensation may be awarded to him as shall be just and proper," this will be sufficient to answer the purpose of a cross-petition for damages to contiguous lands, and will give the court jurisdiction as to the claim of such damages.

3. **Same**—*damages.* Where the owner, over whose land a right of way is sought, by cross-petition, claims damages to other parts of the same tract, an instruction confining the assessment of the jury to the strip of land actually taken, and excluding any consideration of damages to the remainder of the farm, is properly refused.

4. **Same**—*right to damages by purchaser after occupation of right of way.* Where a railroad is located and operated over land belonging to an estate, without condemnation, or otherwise acquiring the right of way, the taking and retaining the land used is a continuing trespass, and on judicial sale the whole land, including the so-called right of way, passes to the purchaser, and he will be entitled to compensation for the land taken and damages for any injury to the part not so taken, on a proceeding to condemn.

5. **Same**—*condemnation not complete until payment.* A condemnation of land for right of way, upon due proceedings, will not deprive the owner of his title,

or right of possession, or of alienation, without payment of the compensation and damages awarded.

6. SAME—*value of land taken—at what time to be fixed.* Where land has been taken and occupied for railroad purposes prior to instituting proceedings to condemn, the value of the land taken at the time of the condemnation is the value to be ascertained, the owner being entitled to any advance between that time and the actual taking of the land; and when the land is sold after its occupation for a right of way, and before proceedings to condemn, the purchaser will be entitled to the advance in value.

7. SAME—*when purchaser may maintain ejectment.* The purchaser of land over which a railroad is constructed and operated without having acquired the right of way, may, upon receiving a conveyance of the legal title, maintain ejectment against the company for the land so tortiously taken and occupied.

8. SAME—*proceeding to condemn admits defendant's title and right to compensation.* A proceeding to condemn land as the property of the defendant, and asking to have the defendant's compensation assessed, is an admission of his title and right to compensation for the land sought to be appropriated for right of way.

9. SAME—*elements of damage.* As elements of damage, the fact that the railroad separates the wood, water and timber from the balance of the farm, the inconvenience to the owner from the perpetual use of the track for moving trains over it, danger to stock kept on the farm, and many other things, may be considered, as well as the actual increase or decrease in the market value of the farm occasioned by the road.

10. NEW TRIAL—*assessment of damages for right of way.* Where the jury, in a proceeding to condemn land for a right of way by a railroad company, go upon the land in person and examine the same, such examination is in the nature of evidence, and in such case, even though the preponderance of the evidence presented in the record is clearly against so large an assessment as found by the jury, a new trial will not be granted, as the facts ascertained by the personal investigation may have fully justified the verdict.

WRIT OF ERROR to the Circuit Court of Kendall county; the Hon. H. H. CODY, Judge, presiding.

Messrs. KRETZINGER & VEEDER, for the plaintiff in error.

Messrs. RICHOLSON & SNOW, for the defendants in error.

Mr. JUSTICE BAKER delivered the opinion of the Court:

This was a proceeding, commenced by the Chicago and Iowa Railroad Company, under the Eminent Domain act, against Robert Hopkins, Christ. Reingardt and Henry Ahrens,

to condemn a certain strip of land described in the petition, for right of way. The land in question is located in De Kalb county, and the petition was filed in that county, but subsequently, by agreement of parties, the venue of the cause was changed to the circuit court of Kendall county. A trial was had in this latter county in August, 1875, in vacation, before the judge and a jury. The jury fixed the compensation and damages of Hopkins at $1500, and further found that Reingardt and Ahrens, who were tenants of Hopkins, had no interest in the land, and were not entitled to any compensation or damages. A motion for a new trial was overruled, and a judgment was rendered on the verdict. The company brings the record to this court and assigns various errors.

The lands described in the petition are all situate in sections 15 and 16, town 38, range 5 east, but upon the trial Hopkins was permitted to introduce evidence as to damages to his whole farm of some 730 acres, a portion of which farm is located in section 21, and which portion is distant 100 rods from the railroad at the nearest point.

It was decided by this court in the case of *Mix* v. *Lafayette, Bloomington and Mississippi Railway Co.* 67 Ill. 319, the evidence should be confined to the particular lots described in the petition, unless the defendant filed a cross-petition setting up he was the owner of other ground not described in the original petition, which would be damaged, and made claim to have the damages thereto likewise assessed.

In *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380, it was held, if appellant had desired to have the damages assessed for injuries sustained to lands owned by him contiguous to the tract described in the petition, he ought to have filed a cross-petition. *Peoria, Atlanta and Decatur Railroad Co.* v. *Sawyer*, 71 Ill. 361, is to the same effect.

The case of *City of Bloomington* v. *Miller*, 84 Ill. 621, cited by defendants in error, announced no different rule, but expressly referred to the *Mix case*, and recognized the rule therein enunciated; and the decision in the *Bloomington case* is based

upon the fact the lot 10 mentioned in the record in said case is a part of the block 3 mentioned in the petition.

It appears, however, the defendant Hopkins filed in this cause a pleading, in substance as follows:

" And the said Robert Hopkins comes and says that he is the owner of the lands mentioned in the petition, and other land contiguous thereto, making a farm of 730 acres in a compact body; that said railroad company takes about 12 acres out of his farm, dividing wood, water and timber from the balance of the farm; that the land thus taken is of the value of $150 per acre, and the damage by reason of cutting the farm is $10,000, and he respectfully asks that his compensation and damages may be awarded to him as shall be just and proper."

Few formal pleadings seem to be required in this class of cases.   The only pleadings expressly mentioned in the statute are, the petition provided for in the second section of the act, and the cross-petition, provided for in the eleventh section, to be filed by any person interested in the property to be taken or damaged who has not been made a party defendant to the original petition.   No provision is made for an answer to either the original or cross-petitions.   Either with or without an answer, and without any formal issue joined, both the party authorized to take or damage property, and the parties defendant, whether made such originally or on their own motion by cross-petition, have the right, under the law, to appear at the time fixed for the hearing of the petition, and to challenge jurors as in other civil cases, and to offer and introduce proofs before the jury.   The object of filing the petition and cross-petitions is to give the court jurisdiction of the subject matter of the inquiry, and all the subsequent proceedings are based upon the petition or petition and cross-petitions, as the case may be.   All evidence offered must be pertinent to the subject of inquiry involved in the proceeding, and the subject of inquiry involved is to be determined from the petition and cross-petitions filed.   Hence the necessity,

although no express statutory provision is made therefor, of a cross-petition or of some written statement of claim for compensation or damages, in cases where a defendant to the original petition seeks to recover for contiguous property not mentioned in such petition. This is the principle that underlies the cases to which reference has been made.

The pleading filed by Hopkins in this cause is substantially a cross-petition, and sufficiently complies with all the necessary requirements of the law and of the former decisions of the court, at least to give jurisdiction of the subject matter of the proposed inquiry. It may be the court would have required, if it had been asked so to do by plaintiff in error, the defendant Hopkins to make his cross-petition or statement of additional claim for damages more specific in some respects,—but this was not done. As it is, the court and the parties are fully advised, by the affirmative allegations of this pleading, that Hopkins claims to be the owner, not only of the lands mentioned in the petition, but of other lands contiguous thereto, making altogether a farm of 730 acres in a compact body; that the railroad company takes about 12 acres out of this farm, and divides the wood, water and timber from the balance of the farm; that he claims the land thus taken is of the value of $150 per acre, and the damages to the whole farm are $10,000 by reason of thus cutting the farm. And, after thus setting forth the damages as to his whole farm of 730 acres in a compact body, and the special causes of his damages, he prays for affirmative relief, and that such compensation and damages shall be awarded to him as shall be just and proper.

It is also insisted, the court below erred in admitting evidence as to the value of seven acres of the right of way over the farm, and as to damages to some 223 acres of the farm known as the Ward land, said seven acres being also a part of said Ward land. It appears said 230 acres had belonged to the Ward estate, and a decree of court had been rendered for its sale; that it was advertised to be sold on the 5th day

of December, 1871, and the railroad track was laid through it the last of November or first of December, 1871, without the company having acquired any right of way across it, by grant or by any of the modes prescribed by law, while it was so advertised. When Hopkins was about to purchase it, he had a conversation with Hinkley, the president of plaintiff in error, in reference to the purchase by him (Hopkins) of said land, and the grant of a right of way to the company across it. Hopkins did purchase said land at such sale and procure a deed therefor, on said fifth day of December.

It is urged, Hopkins purchased said land with the right of way thereon fully occupied and in use by the company—that he did not purchase the right of way nor any right to recover damages with the land, and can not be entitled to recover therefor in this proceeding.

The company was a mere intruder. It had no easement or right of way, and the purchaser at the judicial sale was not bound to take notice of a right that had no existence in fact. The constitution itself provides, private property shall not be taken or damaged for public use without just compensation, and the act of the corporation in taking and retaining the land was a continuing trespass. The title of the Ward heirs was unincumbered by any right of way in the company, and that title to the whole land, including the so called right of way, passed by the judicial sale and deed to Hopkins. Even a condemnation, upon due proceedings, will not deprive the owner of his title or right of possession or of alienation, without payment of the amount awarded. The last act must be performed before the law will regard the land as taken or acquired. Here, no proceedings to condemn were even instituted until March, 1875—more than three years after Hopkins had acquired title. The value of the land taken at the time of the condemnation is the value to be ascertained, the owner being entitled to the benefit of any advance. *Cook* v. *South Park Commissioners,* 61 Ill. 115. We are unable to see upon what theory the Ward heirs would be entitled to recover the in-

21—90 Ill.

creased value of lands, the title of which had passed from them by a judicial sale years before any condemnation. The tortious act of the company deprived neither them nor their grantee of any right, and invested the company with no title or legal possession. Hopkins, after the conveyance to him, might have maintained ejectment.

Again, this proceeding for condemnation was an acknowledgment of his title. The petition filed by the company admits and states the company has no right of way over the very land now in question, and no title thereto, and further, that said Hopkins is the owner thereof, and prays the court to cause to be assessed the compensation to be paid to him by reason of the taking and appropriation of said right of way to the use of the company. The plaintiff in error now complains because the court has done the very thing it asked the court to do. The position now assumed seems to be wholly without either law or justice to support it, and is not entitled to any consideration from this court.

The 9th and 10th instructions asked by plaintiff in error would have confined the assessment of the jury to the value of the one hundred foot strip actually taken and occupied by · it, wholly excluding any consideration of damages to the remainder of the farm, and said instructions were properly refused by the court.

The 8th instruction asked and refused, is too narrow, when tested by the rule of this court as announced in *Rockford, Rock Island and St. Louis Railroad Co.* v. *McKinley,* 64 Ill. 338, *Jones* v. *Chicago and Iowa Railroad Co.* 68 id. 380, *Wilson* v. *Rockford, Rock Island and St. Louis Railroad Co.* 59 id. 273, and other cases. As elements of damage, the fact the railroad separates the wood, water and timber from the balance of the farm, the inconvenience to the owner from the perpetual use of the track for moving trains over, danger to stock kept on the farm, and many other things, may be considered, as well as the actual increase or decrease in the market value of the farm occasioned by the road.

The 4th instruction given for defendants in error, and which was excepted to by plaintiff in error, seems to be in conformity with the views herein expressed, and the court did not err in giving it.

It is also urged, the verdict of the jury was contrary to the evidence, and that the damages are excessive. There is very considerable conflict of opinion among the witnesses as to the damages to the balance of the land and the benefits conferred by the building of the road, and it was for the jury to determine as to the weight of the evidence. Upon the evidence preserved in the record, we might be inclined to think plaintiff in error introduced not only more witnesses as to relative benefits and damages, but better informed witnesses, and that upon such evidence, if considered alone, the assessment of damages should have been for a less amount.

But, it also appears, from the record, that in conformity with section nine of the Eminent Domain act, and by agreement of parties, the jury, after being duly impanneled and sworn, and pending trial, went, in charge of the sheriff, upon the premises and examined the strip of land sought to be taken and the farm alleged to be damaged. What the jury then and there saw and learned, from their own personal observation of the *locus in quo*, we can not know. It is the evident intention of the law such personal examination by the jury is in the nature of evidence to be considered by them, and to what extent they were influenced by such examination in their assessment it is impossible to tell. The results of the personal investigation may have been such as to have fully justified the assessment made, even if it was clear the preponderance of the evidence preserved in the record was against so large an amount.

We are of opinion the judgment herein should be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY took no part in the consideration of this case.