METROPOLITAN WEST SIDE ELEVATED RAILROAD CO.

*v.*

FERDINAND SIEGEL *et al.*

*Filed at Springfield March 30, 1896—Rehearing denied June 9, 1896.*

1. APPEALS AND ERRORS—*release of errors must be pleaded.* Facts tending to show a release of errors cannot be considered on a motion to dismiss, in the absence of any plea of a release of errors.

2. SAME—*plea of release of errors necessary in condemnation.* A plea of a release of errors is as necessary on appeal in a condemnation proceeding as in any other case.

3. SAME—*appeal lies directly to Supreme Court in proceedings to condemn.* To give the Supreme Court jurisdiction of an appeal in a condemnation proceeding it is not necessary that a freehold be involved, as the Eminent Domain act, (sec. 12,) expressly providing for an appeal to such court in all cases, has not been repealed by subsequent legislation.

4. SAME—*basis of damages in condemnation—effect of acts of the parties.* A judgment in condemnation will not be disturbed for refusal of the trial court to allow as damages only the market value of the interest condemned, where a protracted and expensive trial has been had upon the theory, practically agreed upon, that the cost of removal and damages to effects and machinery in removal, and loss of profits by interruption in business, should be included.

5. SAME—*weight to be given conclusion of trial judge as to damages in condemnation.* Where, in condemnation of leaseholds, upon the request of the parties the judge himself examined the property in question and other property concerning the rentals of which evidence was heard, and otherwise informed himself, great weight should, on appeal, be given his conclusion as to damages.

6. DAMAGES—*in condemnation—cost of removing building may be an element of damage.* It seems the cost of removal of a large manufacturing plant from land of low value may constitute an element of damages in condemnation proceedings.

7. SAME—*wages of employees during interruption of business—when too remote.* In proceedings for condemnation, salaries paid to employees working elsewhere than at the establishment condemned, in whose service there was no interruption except the temporary suspension of business caused by removal, are too remote and speculative, especially where damages are allowed for interruption to business.

8. SAME—*rents paid for other premises not allowable.* Rents paid for other premises by parties whose leasehold interests are condemned, during a period when they are released from the payment of all rent accruing under the condemned leases, cannot be allowed.

9. Same—*to sprinkling apparatus on condemned property.* A separate allowance cannot be made for damages to sprinkling apparatus constituting a permanent attachment to a condemned building, the only value of which to the lessee was its use in such building, and which could not be used elsewhere to any advantage.

Appeal from the Circuit Court of Cook county; the Hon. Richard W. Clifford, Judge, presiding.

The appellant company having filed its petition to condemn certain leasehold interests of appellees in certain premises, buildings and improvements used for manufacturing purposes, for its use in constructing its elevated railway, the court allowed appellees Siegel Brothers $138,330, C. F. Baum $13,184, Rubel Brothers $28,000, the Safeguard Account Company $2100 and the American Printing Company $3500. At the request of the parties the items which entered into these total amounts were set forth in the following findings of the trial judge:

"This cause having been submitted to the court for determination without a jury, same having been waived by agreement of parties, the court having heard evidence and arguments and having examined premises sought to be taken, finds and reports that it has ascertained and determined the just compensation to be paid by said petitioner to the owners of and parties interested in the lots, pieces and parcels of land and property over which petitioner seeks to acquire a right of way herein, as stated in its petition, and that the same is as follows:

"To Ferdinand Siegel and Joseph Siegel, composing the firm of F. Siegel & Brothers, as owners of the leasehold estate in the premises described as all of lots 15 and 16 in Egan and Morris' subdivision of lots 2, 3 and 4 in block 84, in school section addition to Chicago, in Cook county, Illinois, excepting so much of said lots as may have been taken for the widening and straightening of the south branch of the Chicago river, together with the buildings, improvements thereon, and their interest in the seventh floor of said building upon said premises

leased by them to C. F. Baum: For the value of said Siegels' leasehold estate and interest aforesaid the sum of $67,330; for loss caused by interruption to said Siegels' business during necessary time consumed in removal, $30,000; for rent of other premises during period of removal to same, $7000; for taking down and setting up of machinery and for moving same, together with moving said Siegels' stock and fixtures, $6000; for damages to fixtures and restoring fixtures in new premises, the sum of $4500; for cost of taking down and putting up, and damages from removing, sprinkling apparatus by removing from same premises, $1500; for salary to be paid to yearly employees during period of removal, and for which no services can be rendered by said employees to said Siegels during the necessary time consumed in removal, $12,000; for damages to goods and merchandise in handling and removing same from present store, $10,000; total compensation to be paid by petitioner to said Ferdinand Siegel and Joseph Siegel, $138,330.

"To C. F. Baum, occupying the seventh floor of the above described premises: For taking down and putting up Baum's machinery, the sum of $2930; for moving Baum's merchandise and machinery, $500; for damages to goods by removal, $1200; for damages to machinery by taking down and removing, $2400; for damages to fixtures, $1450; for rent of other premises during time of removal, $400; for salary to be paid to employees by the year, and for which no services can or will be rendered during removal, $1600; for leasehold interest, $1000; for loss to business caused by interruption during the time of moving, $1700; total compensation to be paid by petitioner to said C. F. Baum, $13,184.

"To Rubel Brothers, for the value of the leasehold estate in the premises described as lot 13 in Egan & Morris' subdivision of lots 2, 3 and 4 in block 84, in school section addition to Chicago, in county of Cook, State of Illinois, the sum of $23,000; for interruption to business

during time of moving, $1000; for depreciation in fixtures on account of removal, $300; for removal of machinery, $400; for salary to yearly employees whose services can not be utilized during moving, $500; for damages to goods and furniture, $1800; for moving goods and fixtures, $1000; total compensation to be paid by petitioner to said Rubel Brothers, $28,000.

"To Safeguard Account Company, occupying portion of said building in premises of said Rubel Brothers: For interruption to their business during removal, $400; for other damages, $1700; total compensation to be paid by petitioner to said Safeguard Account Company, $2100.

"To American Printing and Binding Company, occupying portion of said premises of Rubel Brothers: For total compensation by reason of the taking, $3500.

"And the court finds, from the evidence, that the foregoing sums will, respectively, compensate the respondents for all loss or damage occasioned to them by the taking of said premises for the uses of the petitioner's railroad."

To this finding, and each and every item thereof, and the entry and filing thereof, the petitioner, by its counsel, then and there duly excepted, and afterwards, on July 17, 1894, the court entered its judgment in pursuance of said finding.

COLLINS, GOODRICH, DARROW & VINCENT, and WILSON, MOORE & MCILVAINE, for appellant.

LOESCH BROS. & HOWELL, for appellee C. F. Baum.

KERR & BARR, for appellees Rubel Bros., the Safeguard Account Company and the American Printing and Binding Company.

RICHARD PRENDERGAST, and AUGUSTUS BINSWANGER, (S. P. SHOPE, of counsel,) for appellees Ferdinand and Joseph Siegel.

161—41

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook county, rendered upon the petition of the appellant company to condemn for its uses, in constructing its elevated railway, certain leasehold interests of the respective appellees in certain premises and buildings and improvements used by appellees, principally for manufacturing purposes.

Counsel for the Siegels, in an elaborate argument, insist that the appeal must be dismissed for the following reasons: First, because no freehold is involved; second, because, from affidavits and other papers which they have filed, it is claimed that it is made to appear that after the judgment was rendered and appeal taken by the company, and after the amounts awarded had been paid to the county treasurer and a writ of possession had been awarded by the court, application was made by the Siegels to one of the justices of this court for a *supersedeas* to prevent the execution of the writ of possession; that upon argument said justice announced that he would grant the *supersedeas;* that thereupon an agreement in writing was entered into between the parties that the Siegels should consent to the withholding of the order for a *supersedeas* and the appellant company should cause the county treasurer to pay over to appellees the full amount of their judgment, the payment to be made pursuant to the judgment, and without any restriction, condition or limitation whatever, and without any receipt other than one satisfying such judgment; that payment was in fact so made pursuant to the agreement; that no writ of error was prosecuted by the Siegels to reverse the order for the writ of possession, and that appellant entered into possession of the premises.

Considering first the latter reason urged in support of the motion to dismiss, it is a sufficient answer to say that no plea of a release of errors has been filed, and under the well established practice of this court we can

not consider the facts so attempted to be brought to our notice on a motion to dismiss.   *Morgan* v. *Ladd,* 2 Gilm. 414; *Thomas* v. *Negus,* id. 700; *Corwin* v. *Shoup,* 76 Ill. 246; *Holt* v. *Reid,* 46 id. 181; *Kern* v. *Zink,* 55 id. 449; *Trustees of Schools* v. *Hihler,* 85 id. 409; *People* v. *Young,* 40 id. 87; *People* v. *Supervisors,* id. 87; *Austin* v. *Bainter,* id. 82; *Moore* v. *Williams,* 132 id. 591; *Crosby* v. *Kiest,* 135 id. 458.

· Counsel concede the rule, but urge that as no pleadings other than a petition are required in condemnation, therefore an exception should be made and no plea of a release of errors should be required.   We see no reason for such distinction.   Such a plea is as necessary on appeal in a condemnation proceeding as on any other appeal.

Nor can the motion be sustained on the ground that no freehold is involved in the proceeding.   The 12th section of the act providing for the exercise of the right of eminent domain expressly provides that an appeal shall lie from the trial court to this court in all cases, and we have held in several cases that this section has not been repealed by subsequent legislation.   *Kankakee and Seneca Railroad Co.* v. *Straut,* 101 Ill. 653; *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 id. 110.

It is, however, insisted, that when these cases were decided it was the doctrine of this court that a mere easement cannot, in any case, constitute a freehold estate, but that that doctrine was repudiated in *Chaplin* v. *Commissioners,* 126 Ill. 264, and that in the light of the later ruling a freehold was in fact involved in the cases cited, and that this court had jurisdiction by virtue of that fact, and not simply because the proceedings were had under the eminent domain statute.   Whether the rulings mentioned, that the 12th section of the Eminent Domain act has not been repealed by the Practice act, should, as contended in the ingenious argument of counsel, be regarded as mere *dicta* we do not think it necessary to discuss.   Nor do we think any beneficial purpose would be subserved by considering the question as one of first

impression, even in the light of the comprehensive argument of counsel urging that the Appellate Court statute and the changes in the Practice act as effectually repealed the 12th section of the Eminent Domain act as they did other statutes providing for appeals directly to this court from the circuit court in all cases. The precise question has more than once been determined, and it is believed to have been the uniform practice of this court to entertain such appeals under the Eminent Domain act ever since, as well as before, the establishment of the Appellate Court. (See *Chicago and Evanston Railroad Co.* v. *Dresel,* 110 Ill. 89; *Schreiber* v. *Chicago and Evanston Railroad Co.* 115 id. 340; *Becker* v. *Chicago, Burlington and Quincy Railroad Co.* 126 id. 436; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 id. 144; *Booker* v. *Venice and Carondelet Railway Co.* 101 id. 333.) Unless the rulings in the cases referred to are to be regarded as mere *dicta,* the doctrine of *stare decisis* may well be regarded as having a just application here. At all events, as a question of practice it should be free from uncertainty and should be regarded as settled. The motion to dismiss is overruled.

Counsel for appellant ask a reversal on two principal grounds: First, it is insisted that the amounts awarded to the several appellees are extravagantly large, and are not supported by the evidence; second, that there is no warrant in law for the allowance of any of the items set forth in the findings of the court, except those for the value of the respective leasehold interests of appellees.

On the trial in the circuit court a jury was waived, and after a protracted trial, extending through several weeks, the learned judge awarded the appellees, respectively, the amounts set forth in his findings. The record recites, that "during the trial of said cause, and in open court, the parties stipulated that Judge Clifford should go to and inspect the premises in question and all the property there, and also the locality in which the premises in question were located, and that he might make

inquiries and obtain information out of court, out of the hearing of the parties and of their counsel, as to the facts bearing upon all the issues in the case, and upon all questions and matters concerning which the parties, or either of them, introduced evidence, and should go to and examine the premises in the locality concerning which and the rentals whereof evidence was given during the trial, and in pursuance of such stipulation the said judge did make repeated examinations and inspections of the premises in question, and of all the property of the several respondents, and examined the locality in which said premises were situated, and also inspected and examined the premises concerning which and the rentals whereof evidence was given on the trial, and said judge also made inquiries and received information concerning and bearing on the value of the respondents' fixtures, and the cost of taking down, removing and setting up the fixtures, merchandise and machinery of respondents in said case from a single person, out of the presence of the parties and their counsel and outside of court, and the information so procured was that such value and cost did not exceed the amount thereof found by the court."

The record shows that at the opening of the trial counsel for appellant, in their statement of the case and of the questions to be tried, stated, in substance, that appellees would be entitled to the cost of removal and loss of profits during the time of removal and of the establishing of appellees in another place. Many witnesses were examined, and testimony was produced on both sides as to the cost of removal, damages to effects and machinery in removing and putting them in place in the new location, and loss of profits caused by interruption of business during removal, without any objection being made to the evidence except in minor particulars. The record does show that objections were made and exceptions taken to testimony as to the cost of the removal of certain platforms, partitions and fixtures, on

the ground that they were a part of the building, and also as to certain details bearing upon the other items, but the trial proceeded, substantially through its entire course, for upwards of a month, until the evidence was concluded, upon the theory, apparently adopted by all parties, that appellees were entitled to be reimbursed for all damages which the evidence might fairly show they would sustain by reason of the condemnation of their respective leasehold interests and in the respects above mentioned, but at the conclusion of the trial the petitioner asked the court to hold certain propositions as law in the case, which denied the right of the respondents to any damages except the fair market value of their respective leasehold interests. The court was also then asked by the parties to make separate findings as to the several items of damages allowed.

No point is made in the elaborate briefs and arguments for appellant that the trial court erred in the admission of evidence offered and heard by the court showing the cost of removal of the machinery and other personal property of appellees, the damage to such machinery and property, and the loss from interruption to their business. In this state of the record we do not feel called upon to determine the question principally pressed upon us by counsel for appellant, viz., that the damages should have been confined to the fair market value of the leasehold interests condemned. After a protracted and expensive trial on a theory practically agreed upon as to the proper elements of the damages to be allowed, we cannot hold that the trial court erred in refusing, at the close of the case, to repudiate such theory at the request of the petitioner, especially when it is seen that the result would be to inflict upon those whose property was to be taken without their consent, heavy losses for which they would receive no recompense. For this reason we shall not, to any considerable extent, enter upon the discussion of the question whether, under the rule governing compensation

in such cases, damages are allowable for anything other than interests in the property condemned. It is boldly contended by counsel now representing the petitioner on this appeal, and many authorities are cited to support the proposition, that no damages can in such cases be allowed for injury to or loss of business, expense of removal of personal property from the premises condemned, or injuries to such property unavoidably caused by such removal. This court and many others have often said that the measure of damages is the market value of the property condemned, and that in arriving at such value it is competent to prove any use,—the highest and best use,—for which it is adapted. And this is undoubtedly the general rule; but this court has never held that the rule is without exception, and that cases may not arise where a proper observance of the constitutional provision that private property shall not be taken or damaged for public use without just compensation may not require the payment of damages actually sustained, other than those measured by the value of the property taken. On the contrary, allowance of damages of the nature of those here complained of was sustained in *Chicago, Milwaukee and St. Paul Railway Co.* v. *Hock*, 118 Ill. 587, and *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider*, 127 id. 144. As was said in *Jacksonville and Southeastern Railway Co.* v. *Walsh*, 106 Ill. 253, and in other cases, no damages which are merely speculative can be allowed. But may not cases arise where the cost of removal of personal property from the premises taken, and injury thereto, would exceed the value of the property taken? Let it be conceded that, as contended by appellant, the owner of a leasehold interest would have no greater right to recover such damages than the owner of the fee; might not a case arise where the owner of the fee would be entitled to such damages? Let it be supposed that the fair market value of a certain piece of real estate sought to be condemned is of itself of but small value, but that the

property is occupied by the owner as the site of a costly manufacturing plant, is covered with valuable and complicated machinery, and that such machinery could not be removed except at an expense greater than the value of the premises; must the owner accept the value of the premises, and expend the amount received and an additional sum in removing and repairing his machinery? Such is appellant's contention.

Counsel for appellant say that the burden of removal must be borne by the owner as one of the burdens imposed on the public in favor of those exercising the power of eminent domain for purposes of public improvement. But in such a case the burden is wholly imposed on him whose property is taken without his consent, and his property is as certainly taken or damaged without just compensation as it could be in any case. Counsel further state their contention in the following language: "In a few words we may state our view of the situation when the right of eminent domain is exercised. Independently of that right the owner may sell or refuse to sell, at his will. The exercise of the right of eminent domain may compel him to sell against his will. If he sells voluntarily, the price he receives includes the expense and loss he will incur in removing, and this enters into and helps to make up what is known as the market value. Upon condemnation he is required to be paid the market value before parting with his title. Inasmuch as he could not, in the market, obtain for his property an additional sum beyond the market value because of the expense he will incur in removing, no more can he do so where the sale is compulsory, by reason of the public needs."

If, as stated by counsel, the loss and expense of removal enter into and help to make up the market value when the sale is voluntary, we see no reason why the same elements should not help to make up the market value when the sale is compulsory. But whether or not the market value may be enhanced by the cost and ex-

pense of removal it is unnecessary here to decide, for, as before said, it was conceded on the trial by the petitioner that appellees were entitled to damages covering such loss, and appellant was not injured by having this loss allowed as a separate item (especially when separated at its request) instead of applying the evidence sustaining it to the enhancement of the market value of the leasehold interest. The petitioner wanted these particular pieces of property. They were then devoted to a particular use. For that use they may have been of higher value in the market to any one who might desire and be able so to use them than for any other use, and if so, appellees were entitled to such value. The court and the respondents were invited by the petitioner to treat the items now complained of, separately from the value of the leaseholds, and under the admission that they were proper items to be allowed. By so doing it may well be that a less sum was assessed for such leaseholds than would otherwise have been allowed. At any rate, the respondents were precluded from having the evidence bearing upon these items considered as entering into and helping to make up the market value of the leaseholds.

We are unable, however, to see from what point of view the items of $12,000, $1600, and $500 allowed, respectively, to the Siegels, Baum and Rubel Brothers for salaries to their employees, and $7000 to the Siegels and $400 to Baum for rent of other premises, can be sustained. These employees were mostly buyers and sellers for their respective employers, rendering services elsewhere than at the manufacturing establishments in question, and there could be no reason for any interruption in their service except such as might be caused by the temporary suspension of business by appellees caused by their removal. Such a loss is too remote and speculative. It might or not occur, or it might occur from many other causes. Besides, the court allowed the Siegels $30,000, Baum $1700 and Rubel Brothers $1000 for damages caused

by interruption to their business, and so far as we are able to discover from the evidence these amounts were sufficient to cover all damages properly allowable caused by such interruption of business, whether viewed as a loss of profits, on the theory outlined by counsel for petitioner in their opening statement, or otherwise.

The items $7000 to the Siegels and $400 to Baum for rent of other premises were equally improper to be allowed. The Siegels were allowed $67,330 and Baum $1000 for their respective leasehold interests, and the court required the owner of the building condemned to release, and he did release, these parties from the payment of all rent which would accrue against them under their leases from and after July 1, 1894, so that after that date they were not required to pay any rent, although they did not deliver up the possession of the premises until the compensation allowed to them was paid. Ferdinand Siegel, one of the appellees, testified that, assuming a building to be prepared for general renting purposes in the wholesale district, as ordinarily found there for rent, it would take from four to six weeks to fit it up to receive their plant, fixtures, stock and force. It does not appear that they would be, or were, compelled to move within that time after July 1, hence they could suffer no damages in this regard. Even if these items were to be treated as a part of the expenses of removal in view of the theory adopted on the trial, there is not sufficient evidence in the record to show that these appellees would be, or were, compelled to pay any such rent while they were also paying rent for the premises condemned. In no view of the case could appellant be required to pay full value for the premises taken and to furnish appellees at the same time other premises besides.

Nor can we, from the evidence, sustain the finding of the trial court in allowing $1500 to the Siegels for the cost of taking down and putting up, and for damage to, the sprinkling apparatus which they had in use in the

premises condemned. The evidence showed that it could not be taken down and put up elsewhere to any advantage whatever. This was undisputed. It was a permanent attachment to the building, and its only value to the Siegels was its use while they occupied the building to which it was attached. The value of its use for the remainder of the term was, or at least should have been, included in the value of the leasehold. We must presume it was so included.

There are other items allowed, of considerable amounts, which counsel insist have no place in a judgment of this character; but from the view we have taken of the case they ·may properly be classified under one or more of the general heads embraced in the theory adopted by the parties in the trial of the cause, and which, whether technically allowable or not in the form in which they were allowed, common justice required should be allowed in some form, to the end that appellees' property may not be taken or damaged without just compensation. This reasonable view taken by counsel for the petitioner on the trial cannot now properly, on the request of the petitioner, though preferred by other counsel, be disregarded.

But it is insisted strenuously, and not without force, that the amounts allowed by the court exceed the damages actually sustained by appellees, as shown by the evidence. In view of the fact, however, that in addition to hearing the evidence in open court the trial judge examined the property in question and other property concerning the rentals of which evidence was heard, and otherwise informed himself, as he was requested and authorized to do by the parties, great weight should be given to his conclusions. Here were large manufacturing establishments sought to be taken or damaged by the petitioner at the busiest season of the year. They were equipped with costly and complicated machinery and stocked with large quantities of material found to be in the many different stages through which it must pass

in the process of manufacture. The public needs were such that the private interests of the owners must be yielded up, and that, too, with but little delay. It was probably a case, and it was evidently so regarded by the parties in view of their stipulation and statements contained in the record, where the judgment of the trial judge as to questions of fact, after having heard the evidence and made the examinations and inquiries contemplated by the parties, should be regarded as all but conclusive. In *Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 Ill. 491, we said, that "in all such cases it has always been held that the finding should be clearly and palpably against the weight of the evidence, to justify an Appellate Court to interfere with the finding of fact." (See, also, *Chicago and Iowa Railroad Co.* v. *Hopkins*, 90 Ill. 316; *Chicago and Evanston Railroad Co.* v. *Jacobs*, 110 id. 414; *Ward* v. *Railroad Co.* 119 id. 287; *Chicago and Evanston Railroad Co.* v. *Blake*, 116 id. 163; *Chicago, etc. Railroad Co.* v. *Catholic Bishop*, 119 id. 525; *Sanitary District* v. *Cullerton*, 147 id. 385.) As to some of the items allowed the amounts appear to us to be large, but not so clearly excessive as to justify a reversal on that ground.

The judgment will be affirmed as to the appellees the Safeguard Account Company and the American Printing and Binding Company, and upon *remittiturs* being entered herein at or before the June term, 1896, of this court by said Siegel Brothers of $20,500, by said Baum of $2000 and by said Rubel Brothers of $500, (which several amounts are the aggregates of the respective items above mentioned as having been improperly allowed,) said judgment as to the balance so allowed to them, respectively, by the circuit court will be affirmed, otherwise said judgment as to them will be reversed and the cause remanded for further proceedings.                    *Judgment accordingly.**

---

*The several *remittiturs* mentioned above having been entered at the June term, 1896, the judgment in the cause was affirmed.