**UNITED STATES v. BECKTOLD CO.**

No. 12173.

Circuit Court of Appeals, Eighth Circuit.
July 13, 1942.

Rehearing Denied Aug. 15, 1942.

souri. The property was described in the Government's petition for condemnation as, "A lot of ground in Block 61 of the City of St. Louis, fronting 54 feet 6 inches, more or less, on the west line of Second Street, by a depth westwardly of 153 feet 9 inches, more or less, to an alley. Bounded north by Pine Street, and south by the north line of property now or formerly of the William G. Mueller Estate, said line being the center of an 18-inch party wall." The Government by its petition sought to take and acquire by condemnation the property described "in absolute fee simple, free and clear and discharged from all liens, incumbrances, servitudes, charges, restrictions and covenants whatsoever."

On November 23, 1938, a commissioner's report was filed, awarding compensation of $40,902.00. Each of the parties filed exceptions and demanded a jury trial. On June 15, 1939, the United States filed a declaration of taking pursuant to the Act of February 26, 1931, 40 U.S.C.A. § 258a, and deposited estimated compensation of $32,334.00. Thereupon the court entered judgment on the declaration, and directed the owner to surrender possession by a date fixed by the order. For convenience, we shall refer to the Government as plaintiff and to the Becktold Company as defendant. After the entry of judgment a stipulation was entered into and filed, by which it was agreed by the parties that machinery and equipment might be removed by defendant without prejudice to the rights of either party. On trial, the jury fixed defendant's damages at $76,148.00, and on a general verdict for that amount the court entered judgment.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo. (Norman M. Littell, Asst. Atty. Gen., Roger P. Marquis, and Vernon L. Wilkinson, Attys., Department of Justice, all of Washington, D. C., on the brief), for appellant.

Milton Yawitz, of St. Louis, Mo. (Rassieur, Long & Yawitz, of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

GARDNER, Circuit Judge.

This was a proceeding brought by the United States under the Historic Sites Act of August 21, 1935, Title 16 U.S.C.A. § 461, to condemn certain real estate owned by the Becktold Company, of St. Louis, Missouri.

The property is located in the river-front area of St. Louis. In 1859, there was constructed on it an ornate bank building with marble facing on the front and very elaborate cast iron ornamentation. Defendant leased the premises about 1870, and since that time, until the Government took possession under this proceeding, it has carried on a book binding business in the building. In 1925, the then owner of the property was unwilling to strengthen the building so as to accommodate heavier machinery required by defendant in its business, and it then purchased the property for $45,000.00. In 1927 and 1928, it remodeled the building at a cost of $25,000.00. In 1930, it constructed in the building a special fire proof air-brush room, at a cost of $6,000.00. At the time plaintiff in-

stituted condemnation proceedings, defendant was operating its book binding plant on this property and on adjoining property which it had leased.

It was the contention of the Government in the lower court, and it renews that contention here, that it was liable to compensate defendant only for the land and the building, without any reference to the machinery and equipment installed therein. On the other hand, it was and is the contention of defendant that the Government was liable to compensate it for a completely integrated plant, including land, building, equipment and machinery, less a credit to the Government for the market value of the machinery which it had removed pursuant to stipulation of the parties. Defendant's evidence was first submitted, and, over the objection of the Government, embodied a valuation of the property as it stood at the time of taking, including the land, the building, the machinery and equipment. The Government's evidence was limited to the value of the land and the building, excluding all machinery, fixtures and equipment.

There were 150 different machines in the building, all bolted to the floor, among them thirteen folding machines weighing from 7,000 to 10,000 pounds each, the larger of these being ten feet high by twenty-five feet long. There were six knife cutting machines, with an average weight of 7,500 pounds each, and three knife trimmer machines, of an average weight of 12,000 pounds each; there was a gathering machine, fifty feet in length, weighing about 10,000 pounds, two smashing machines weighing about 5,000 pounds each, a packing machine, weighing about 10,000 pounds, a Murray back liner, twenty-five feet in length and weighing about 11,000 pounds, two case-making machines, weighing about 3,000 pounds each, five embossing machines, weighing from 7,000 to 15,000 pounds each, and two gang wire stitchers, about thirty feet in length. These are mentioned by way of illustration. The machinery was for the most part very heavy. Much of it could neither be installed in the building nor removed therefrom through any of the normal openings, but it was necessary to remove the windows and window casings, and part of the walls of the building. On occasion the walls had to be torn down for a width of about fifteen feet in order to admit machinery into the plant. The plant as a bindery had a capacity of 15,000 books per day of twenty-four hours. When defendant purchased the building, it was with a view of making it a permanent location for its business and to retain the machinery there permanently, and it was remodeled in 1927 and 1928 with that in view. Various spots in the building were reinforced by running steel beams or heavy joists in order to support the heavy machinery.

Plaintiff seeks reversal on the ground that the court erred in admitting evidence as to value of the property taken, and it asserts that the verdict is not supported by competent evidence.

It is important to determine at the outset the nature or character of the property which plaintiff has taken and for which it is liable to compensate the owner. It is described in the petition as real estate located in St. Louis, Missouri. Counsel for plaintiff say the Government simply wants the property as a historic site and that it has made no attempt to acquire the book binding business. It is true that it has not attempted to acquire the book binding business, and injury to a business is not an appropriation of property for which compensation must be made by the Government. But neither is plaintiff desirous of acquiring the structure on this land, yet it is liable for the value of the land as enhanced, if at all, by any permanent structure that is upon it. Plaintiff's own evidence includes the value of the original structure. The question is not what value the property may have to the Government, but what damage defendant suffers by the taking of the property. Bauman v. Ross, 167 U.S. 548, 17 S.Ct. 966, 42 L.Ed. 270; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725; City of St. Louis v. Brown, 155 Mo. 545, 56 S.W. 298. The Federal Constitution guarantees the property owner just compensation. If the machinery, fixtures and equipment in this building formed a part of the realty and tended to enhance the value of the realty, then it was being taken by the Government the same as the building on the lot described was being taken. As said by the Court of Appeals of New York in Jackson v. New York, 213 N.Y. 34, 106 N.E. 758, L.R.A. 1915D, 492, Ann.Cas.1916C, 779, speaking through Judge Cardozo, later Mr. Justice Cardozo,

" 'Condemnation' is an enforced sale, and the state stands toward the owner as buyer toward seller. On that basis the rights and

duties of each must be determined. It is intolerable that the state, after condemning a factory or warehouse, should surrender to the owner a stock of secondhand machinery and in so doing discharge the full measure of its duty. Severed from the building, such machinery commands only the prices of secondhand articles; attached to a going plant, it may produce an enhancement of value as great as it did when new. The law gives no sanction to so obvious an injustice as would result if the owner were held to forfeit all these elements of value. An appropriation of land, unless qualified when made, is an appropriation of all that is annexed to the land, whether classified as buildings or as fixtures, and so it has frequently been held."

Whether or not these fixtures and machinery under the facts disclosed constituted a part of the realty was dependent upon the law of the State of Missouri, the lex loci rei sitae. This was a question of real estate law which must always be determined by the law of the state in which the realty is located. Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028; United States Truck Co. v. Pennsylvania Surety Corp., 259 Mich. 422, 243 N.W. 311; Restatement Conflict of Laws, § 208. This is true regardless of how the court may have acquired jurisdiction, or where the court may be located. The same principle is applicable in the determination of the question as to what law governs in the ascertainment of whether certain articles are or are not fixtures. The law of the state where the property is situate also controls in deciding whether annexation of a chattel to a freehold makes it a part of the realty. Triumph Electric Co. v. Patterson, 8 Cir., 211 F. 244; Manufacturers Bank & Trust Co. v. Lauchli, 8 Cir., 118 F.2d 607; Bergh v. Herring-Hall-Marvin Safe Co., 2 Cir., 136 F. 368, 70 L.R.A. 756; Minor v. Cardwell, 37 Mo. 350, 90 Am.Dec. 390.

We therefore look to the law of Missouri. It is well established by controlling decisions of Missouri that where machinery is placed in a building and the land, building and machinery are used together as a factory or plant, the machinery is a part of the realty. City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713; City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 272 Mo. 80, 197 S.W. 107; Rogers v. Crow, 40 Mo. 91, 93 Am.Dec. 299; Thomas v. Davis, 76 Mo. 72, 43 Am.Rep. 756; Progress Press Brick & Machine Co. v. Gratiot Brick & Quarry Co., 151 Mo. 501, 52 S.W. 401, 74 Am.St.Rep. 557; Banner Iron Wks. v. Aetna Iron Wks. 143 Mo.App. 1, 122 S.W. 762; Havens v. Germania Fire Ins. Co., 123 Mo. 403, 27 S.W. 718, 26 L.R.A. 107. It appears from the undisputed testimony that following defendant's purchase of the property, it remodeled the building so as to make it adequate as the permanent housing place for its machinery. The machinery was placed in the property with the intention that it become a permanent part of the structure. Much of it had to be brought in through openings made in the walls, and some of it was so complicated that it required months to set it up and get it running. There was no thought or intention that any of the machinery so installed was to be removed. It would have passed to the vendee as a part of the realty upon voluntary sale of the property. It was necessary to the purposes for which the building was used and was constantly used in connection with that business. We conclude that the machinery and fixtures constituted a part of the realty which the Government was condemning. With this in mind, we consider the objections interposed by the Government to certain of defendant's testimony.

As a part of its proof to establish the value of the property taken, defendant offered testimony of certain experts as to the cost of reproduction, less depreciation. In some instances the testimony dealt only with the building proper, while in other instances the testimony dealt with the fixtures, and it is insisted that this permitted a recovery of separate items, additional to the market value of the land. There was opinion evidence as to the value of the entire structure, including land, building and fixtures. There was an appraisal by an appraising company, which in addition to fixing a total value of the property as a whole, gave detailed appraisals of the various elements which went into this valuation. Corroborative of the valuation of the property as a whole, there was evidence as to the cost of reproduction of the building and fixtures, less depreciation. We have already held that both the building and the fixtures constituted part of the realty. The property taken was the land as enhanced by the value of structures and fixtures. Manifestly, evidence as to the cost of reproduction, less depreciation, was

proper evidence to be taken into consideration by the jury in determining the value of the property as a whole. Thus, in Banner Mill. Co. v. State, 240 N.Y. 533, 148 N.E. 668, 41 A.L.R. 1019, it was held that in ascertaining the fair market value of land upon which a flour mill was situated, the court might consider not only the cost of production but all the costs necessarily or reasonably expended in bringing the mill into effective working condition, all to be weighed with the other evidence of value; that all the uses that could be made of the property might be considered, as well as the value of the plant as a live, going flour mill, and the increased value, if any, which the structure as used had given to the land, and all the valuable appurtenances and availabilities of the property.

 In the instant case, the evidence showed that there had been no sales of a bindery in twenty years, and the Government's witnesses testified that they knew of no sales in the vicinity upon which to base their valuation of the property, and that in arriving at the value of the property (land and building), they considered building replacement cost new, less depreciation, plus the value of the land. Such evidence has been held admissible by this court. In Union Electric Light & Power Co. v. Snyder Estate Co., 8 Cir., 65 F.2d 297, 305, it is said:

"Plaintiff also contends that the testimony of this witness was inadmissible because he based his estimate of value upon what it would cost to obtain a similar amount of power from other sources, or in other words, its replacement value. The cost of reproduction has a tendency to show present value, and we think this testimony admissible in condemnation cases. * * * A market value could scarcely have been established, and as said by this court in Hard & Rand v. Biston Coffee Co., 41 F.2d 625: 'Where value is an issue, the inquiry may properly be allowed to take a wide scope. Evidence of the cost, selling price, replacement value, depreciation, use value, junk value, location of the property, local demand for it, and many other things may be shown. Many elements properly enter into the determination of "fair value," and evidence bearing on the question may be admissible, although it may have but little weight.' "

It is urged by plaintiff that the Missouri courts have held to the contrary, and in support of that contention the case of City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942, 944, is relied on. In that case the court said that all the testimony was to the effect that the building was obsolete and not adapted to the character of the land. But the court said that, "It is true that where the character of the structures is well adapted to the kind of land upon which they are erected, the cost of the buildings and fixtures, after making proper deductions for depreciation by wear and tear, may be a reasonable test of the amount by which they enhance the market value of the land."

The cases of Devou v. City of Cincinnati, 6 Cir., 162 F. 633, and United States v. Meyer, 7 Cir., 113 F.2d 387, are also relied on by the plaintiff, but in the Devou case the court does not hold such evidence inadmissible in all cases but that it was inadmissible in that case. In the course of the opinion it is said: "There may be cases where it is proper enough to permit testimony as to the value of the building separate from the land, and all the land separate from the building, where from such evidence the jury can reach the fact which it is to ascertain, namely, the market value of the land including the building." [162 F. 636.]

The Meyer case dealt with timber land, and the court correctly held that separate valuation of the timber would be improper.

 Value of structures and fixtures constituting a part of the realty to be taken may be shown as an aid to the jury in finding the value of the real estate and in fixing just compensation for the whole property. City of Baltimore v. Himmel, 135 Md. 65, 107 A. 522; In re Blackwell's Island Bridge, 198 N.Y. 84, 91 N.E. 278, 41 L.R.A.,N.S., 411, 139 Am.St.Rep. 791; Banner Mill. Co. v. State, supra; Seattle & M. R. Co. v. Roeder, 30 Wash. 244, 70 P. 498, 94 Am.St.Rep. 864. In Re Blackwell's Island Bridge, supra [198 N.Y. 84, 91 N.E. 279, 41 L.R.A.,N.S., 411, 139 Am. St.Rep. 791], the court, among other things, said:

"But when a building has an intrinsic value, which must be added to the value of the land in order to ascertain the value of the whole, the owner may not be able to establish his just compensation unless he is permitted to prove the value of his land as land and the value of his buildings as structures. By adding to each other these two quantities the result is really the value

of the land as enhanced by the buildings thereon."

The testimony, in view of the circumstances of this case, was admissible.

 The president of the defendant was permitted to testify that it had paid $45,000.00 for the property in 1925, and the admission of this evidence is charged as error. Ordinarily, evidence of price paid is admissible on the question of value. Ed. S. Michelson, Inc., v. Nebraska Tire & Rubber Co., 8 Cir., 63 F.2d 597; Mitchell v. Commissioner, 2 Cir., 48 F.2d 697; Travelers Indemnity Co. v. Plymouth Box & Panel Co., 4 Cir., 99 F.2d 218. The fact that the purchase was made some fourteen years before the date of taking the property went to the weight of the evidence, rather than to its admissibility. The court in its discretion properly admitted the testimony. Metropolitan Life Ins. Co. v. Armstrong, 8 Cir., 85 F.2d 187; Chapman & Dewey Lbr. Co. v. Hanks, 6 Cir., 106 F.2d 482. A judicial discretion as to the admission of evidence of this character is vested in the trial court and that discretion will not ordinarily be disturbed on appeal.

The court instructed the jury that the owner of the property was entitled to recover the fair market value of the property, and said that, "Various theories or ways of arriving at or checking market value are advanced in the testimony. None of them are binding on you except insofar as they are in accord with your own observation, human experience and common sense. You will give to them and the testimony relating thereto or based thereon such weight and consideration as you deem them entitled to. You are entitled to consider and weigh all the facts and all the circumstances that you have heard in the case, gentlemen, as to the fair market value of the property, and then by your verdict return the amount which in your estimation is the fair market value."

We think the court did not abuse its discretion in admitting this testimony.

 A Mr. Brock testified on behalf of defendant that he was in the business of book manufacturing and book binding in Chicago; that he had been connected with that business for nineteen years; that he was acquainted with the cost of machinery used in the bindery business and well acquainted with bindery plants and values; that he went completely through defend-

ant's plant in 1939. He was then asked his opinion as to the value of the plant and building as a whole. This was objected to on the ground that the Government was not condemning the plant as a whole, but the real estate and building with such personal property as had been so attached to the building that it became a part of it and could not be removed without injury to the personal property or without injury to the building. The objection was properly overruled and the witness gave his answer, fixing the value at $250,000.00. He was then asked with reference to the value of the removable machinery, and was asked what in his opinion would be the normal production of the plant as it stood. This was objected to on the ground that the Government was not condemning the business. Defendant's president had already testified without objection as to the output of the plant so that the evidence was already before the jury, and the admission of this evidence could not therefore, have been prejudicial. The witness testified as to the capacity of the plant and as to the condition of the machinery and equipment. On cross-examination he was asked how he arrived at the value of the plant, and he testified that he took into consideration its earning capacity; that he knew what a plant was worth per square foot, what it cost to erect the plant, and that he based his figure as to the building and grounds on that. He further testified:

"Q. Your whole basis of arriving at the value of the plant is reproduction new, is it not, Mr. Brock? A. That is the basis of it."

Asked with reference to the annual depreciation on the building he testified: "Well, I can't answer that for the buildings in this locality. A building put up for bindery purposes, while it might have a fixed depreciation for one purpose, for bindery purposes it doesn't have that depreciation, because it is a particularly heavy type building. You can not use a light building for book binderies. You have to have heavy construction, capable of carrying loads of two hundred and fifty to three hundred pounds, at least, per square foot. Those buildings are not plentiful on the market today; they are difficult to get. I know, because I have looked for such buildings in my own city. I would set up depreciation of the building at five percent per year. * * *"

He then testified with reference to the average age of the machinery. He was then asked:

"Q. Then you are depending upon the lists that are put out by the machinery companies that do handle this secondhand machinery? A. They establish the market for it, yes.

"Q. And you are depending on that, in your testimony here? A. Yes, indeed."

He further testified on cross-examination that he would pay from $150,000.00 to $160,000.00 for the machinery in the plant as it stood; that if he had to take the machinery out it would be worth about $75,000.00. He was then asked about the value of particular machinery. He testified that on the machinery he used the theory of value based upon a willing buyer and a willing seller on the complete plant. He also testified that he placed his valuation on a capitalization basis. His testimony was introduced with substantially no objection. The Government then interposed a motion to strike all his testimony relative to value because based upon an erroneous theory and that, "The fair cash market value is determined by the sum at which a purchaser, who was not obliged to buy, and a seller, who was not obliged to sell, in the open market, would arrive at." It may well be that a part of the testimony of this witness was not admissible. A part of his testimony, however, was clearly admissible, and the motion was directed to his entire testimony. In these circumstances, error can not be predicated upon a refusal to grant the motion. Hill v. Wabash Ry. Co., 8 Cir., 1 F.2d 626; Chicago Great Western Ry. Co. v. McDonough, 8 Cir., 161 F. 657; Koopman v. Farmers' Mutual Hail Insurance Ass'n, 209 Iowa 958, 229 N.W. 221.

In view of the wide scope of the testimony, and the instruction to the jury above quoted, we can not say that the admission of this testimony was prejudicial. There was evidence before the jury from which it could have found that the value of the ground and the building proper exceeded the amount of the verdict, and the jury may therefore have limited the amount of damages to the valuation which it might well have placed upon the lot and building alone under the evidence. Whether prejudice results from the erroneous admission of evidence is a question not to be determined abstractly. The question is one of practical effect, viewed in the light of the trial as a whole, with all its attending circumstances.

It is urged that the court erred in receiving evidence as to the value of the machinery and equipment used by the company and installed on this property. The objections interposed to this class of testimony were based upon the erroneous theory that the machinery and equipment did not constitute a part of the real property being taken by the plaintiff. We have already decided this issue against plaintiff's contention. But it is argued that even if it be assumed that the machinery constituted fixtures which were condemned by the Government, the admission of this testimony was erroneous because, by reason of the stipulation of the parties, the defendant now has the machinery and is operating it on its new location. Standing alone this statement is misleading. The stipulation, entered into after plaintiff had appropriated the property, provided that the defendant might remove from the premises "all or any part of the machinery and equipment located in the building constituting a part of said premises and property and heretofore used by the Becktold Company in conducting its business of manufacturing, without prejudice to any right said Becktold Company may have to contend, claim and assert that the said machinery and equipment were, on the date this suit was filed, and are now, a part of the premises condemned and taken by plaintiff in these proceedings and that it, the said Becktold Company, is entitled to compensation for the same." The stipulation also provides that it should in no way prejudice the right of the plaintiff to contend that the machinery and equipment were personal property and not a part of the real estate included in the property condemned. The stipulation also contained provision that if it should be determined in the condemnation proceedings that the machinery and equipment were a part of the property condemned, and that the defendant was entitled to compensation therefor, then "the plaintiff shall be entitled to recoupment to the extent permitted by law for and on account of that part of the machinery and equipment so held to be a part of the property condemned and taken which may, by virtue of this stipulation, have been removed by the Becktold Company from the premises condemned." The removal of this machinery under the conditions specified could not have any bearing upon

this issue, nor preclude the defendant from asserting its right to be compensated therefor. The stipulation specifically preserves that right. The inventory submitted in connection with the appraisal showed that part of the property consisted of tools and removable personal property, as to which defendant expressly waived any claim, and the court instructed the jury that it should not consider as part of defendant's plant, for the purpose of determining its value, "the lockers, cupboards, work-benches, racking, shelves, office furniture and equipment, tools, trucks, dies, plates and type, as to which the defendant has by express waiver withdrawn any claim." The removal of the fixtures can, therefore, have no bearing whatever upon the question of the admissibility of the testimony challenged. The court, in accordance with the stipulation of the parties, instructed the jury that if the defendant removed part of the property, plaintiff was entitled to credit or offset equivalent to the reasonable market value of the part of the property removed. There was evidence tending to show what the value of this removed property was where the buyer was confronted with the necessity of moving it from the building. The court's instruction as to the effect of the removal of the machinery from the building finds direct support in the decision of the Supreme Court of Missouri in City of St. Louis v. St. Louis, I. M. & S. Ry. Co., 266 Mo. 694, 182 S.W. 750, L.R.A.1916D, 713. In calculating the value of the machinery, a buyer would of necessity consider the cost of removal and reinstalling. Evidence covering these elements was therefore properly submitted for the jury's consideration. Such evidence simply corroborated the testimony of the witnesses with reference to the value of the property in view of the necessity of removing it. It was not introduced in proof of damages for which the defendant was entitled to recover. The fair value of the property removed, over and above the cost of removing it, was deductible from the compensation payable. Springfield Southwestern Ry. Co. v. Schweitzer, 173 Mo.App. 650, 158 S.W. 1058. The rule is well stated in Re Widening of Gratoit Ave., City of Detroit, 294 Mich. 569, 293 N.W. 755, 757, as follows:

"As to the owner of land, the fixtures enhance the value of the land and in awarding compensation where the owner removes the fixtures, the proper measure of damages is the value of the land as so enhanced, less the value of the fixtures in view of the necessity of severing them."

See, also, Philadelphia & R. R. Co. v. Getz, 113 Pa.St. 214, 6 A. 356; Metropolitan West Side Electric R. Co. v. Siegel, 161 Ill. 638, 44 N.E. 276; North Coast R. Co. v. A. A. Kraft Co., 63 Wash. 250, 115 P. 97.

There was therefore no error in admitting evidence as to the cost of removing and reinstalling this machinery in connection with the evidence as to its fair market value.

We conclude that the record discloses no reversible error, and the judgment appealed from is therefore affirmed.