THE COOK AND RATHBORNE COMPANY

*v.*

THE SANITARY DISTRICT OF CHICAGO.

*Opinion filed February 17, 1899.*

1. ORDINANCES—*earlier ordinance inconsistent with a later one is repealed.* An earlier ordinance inconsistent with or repugnant to a later one on the same subject and having the same purpose in view is repealed, although the two ordinances appear under different headings in the ordinance book.

2. EVIDENCE—*admissibility of ordinances on question of damage in condemnation.* A "fire ordinance" fixing a penalty for piling lumber within one hundred feet of any wood-working establishment having been introduced on the question of damages by the defendant in a proceeding to condemn a strip of land off of a tract leased by it for a box factory and for storing its lumber, the petitioner may introduce a "building ordinance," passed a year later, reducing the distance fixed by the fire ordinance to fifty feet.

3. EMINENT DOMAIN—*when danger from fire is not an element of damage.* Damages for alleged increased danger from fire, occasioned by defendant having to pile its lumber within eighty feet of its box factory owing to the taking of part of its land by condemnation, are merely speculative, where the use for which the land was taken will not increase the risk of fire and the ordinances of the city recognize fifty feet from the factory as the danger limit.

4. SAME—*contingent and speculative damages cannot be considered.* In estimating the compensation for a strip of land condemned by a sanitary district on the bank of a river, being part of a tract occupied by the defendant for a box factory and storage, damages to the defendant's business which are merely contingent and speculative, such as the increased cost in case it should become necessary to transport a certain quantity of lumber by rail instead of water for a period of five years in the future, cannot be considered.

APPEAL from the County Court of Cook county; the Hon. JOHN H. BATTEN, Judge, presiding.

This was a petition filed in the county court of Cook county by appellee, the Sanitary District of Chicago, to condemn a strip of land on the Chicago river. The land proposed to be taken contained about 8900 square feet, a part of which was submerged land. Henry A. DuPont

was the owner of the property, but the appellant, the
Cook & Rathborne Company, held a lease of a large tract
of land from DuPont, of which the property sought to be
condemned was a part.   The Cook & Rathborne Company
carried on a box manufactory on the premises leased by
it, and it filed a cross-petition, in which it alleged that
its lease covered not only the premises sought to be
condemned, but other property, describing the same, and
contended that the remainder of its property and its busi-
ness would be injured by the taking away of the strip in
question, and asked for an assessment of damages to the
portion not taken.

The appellant, during the progress of the trial on the
questions involved in its cross-petition, introduced in evi-
dence section 668 of the Revised Code of the city of Chi-
cago for the year 1897, in reference to piling lumber near
a wood-working manufactory or planing mill, which reads
as follows:

"668. *Piling Lumber*—No lumber shall be piled, for the
purpose of storing, seasoning or drying the same, within
one hundred feet of any planing mill or wood-working
manufactory, nor within one hundred feet of any private
residence, unless the same has been erected since the es-
tablishment of such yard.   Any person, firm or corpora-
tion violating any of the provisions of this section shall
be fined in the sum of not less than $10 nor more than
$100, and every day that lumber shall remain piled, or
any place kept for the storage or piling of lumber in
contravention of any of the provisions of this section,
shall be deemed a new and distinct offense."

During the progress of the trial, appellee, over the
objection of appellant, offered and read in evidence sec-
tion 208 of an ordinance passed by the city council of the
city of Chicago on March 29, 1898, bearing on the same
question as the ordinance above introduced by appellant,
which is in words as follows, to-wit:   "No lumber shall
be piled, for the purpose of storage, seasoning or drying

the same, within fifty feet òf any planing mill or wood-working manufactory, nor within one hundred feet of any private residence, unless the same has been erected since the establishment of such yard."

The court, at the request of petitioner, gave to the jury, among others, the following instruction:

12. "The court instructs the jury that under the ordinances of the city of Chicago the defendant, Cook & Rathborne Company, are permitted to pile lumber for the purpose of storage, seasoning and drying, up to fifty feet of any wood-working manufactory."

The jury returned a verdict that the just compensation to be paid by the petitioner for the land taken was $8965,—$7395 to the land owner, Henry A. DuPont, and $1570 to the tenant, the Cook & Rathborne Company; and assessed the damages accruing from the temporary occupation of a portion of the premises in question not taken, while replacing the dock according to the stipulation of petitioner filed therein, at $400. The court entered judgment on the verdict, and the Cook & Rathborne Company appealed.

HAMLIN & BOYDEN, for appellant.

F. W. C. HAYES, and SEYMOUR JONES, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

The first or principal ground of reversal insisted upon by appellant is the admission in evidence by the trial court of the foregoing ordinance, section 208, by appellee, passed by the city council of the city of Chicago March 29, 1898. Previous to the introduction of this ordinance by appellee the appellant had introduced in evidence, in support of its cross-petition, section 668 of the Revised Code of the city of Chicago for the year 1897, for the purpose of showing that it could not utilize the space nearer its box manufactory than one hundred feet because of this ordinance, and was thereby deprived of this amount of

space for piling lumber.    A comparison of the two ordinances shows the one passed March 29, 1898, introduced in evidence by appellee over the objection of appellant, is *identical in language* with the ordinance published in the Revised Code of 1897, introduced by appellant, except that the words "fifty feet" are used instead of the words "one hundred feet."    While section 208 (the later ordinance) is a portion of what is termed the "building ordinance," and section 668 (the earlier ordinance) is part of what is termed the "fire ordinance," they are both on the same subject.    Both relate to the piling of lumber for the purpose of storing, seasoning and drying the same.    Both, in effect, are "fire ordinances," and their only object is to limit the piling of lumber within a certain distance of wood-working manufactories, and thereby lessen, as far as possible, the spread of fire and disastrous conflagrations in the manufacturing lumber districts of the city of Chicago.    What was the effect of this later ordinance of March 29, 1898, on the ordinance of 1897?    That the two are inconsistent with each other is clearly apparent, and while there is no express language repealing the earlier ordinance, the rule is, that where there are two ordinances relating to the same subject matter which are repugnant and inconsistent with each other, the later ordinance repeals the former.    In *Dutton* v. *City of Aurora*, 114 Ill. 138, this court said:    "Where the provisions of a former and a later statute are inconsistent and repugnant in respect of the same subject matter, the latter is a repeal of the former to the extent of the inconsistency or repugnancy."    See, also, *Union Trust Co.* v. *Trumbull*, 137 Ill. 146; *Korah* v. *City of Ottawa*, 32 id. 121; Dwarris on Stat. 673; *Culver* v. *Third Nat. Bank of Chicago*, 64 Ill. 528.

The ordinance of 1897 being repealed by the ordinance of 1898, the giving of the instruction to the jury, that under the ordinances of the city of Chicago the Cook & Rathborne Company was permitted to pile lumber up to fifty feet of its wood-working manufactory, was not error.

It is urged that the court should have permitted the witness W. W. Rathborne, in rebuttal, to answer the question, "Does it cost you any more insurance to pile inside of eighty feet toward the mill—more than you now pay?" The cases cited by appellant in support of its position are cases in which railroad companies have exercised the right of eminent domain, and this court has held it is competent to show that there is danger of fire from passing engines to buildings and property not taken, and that the market value is depreciated, not only for the present but the future. The case of the petitioner, the Sanitary District of Chicago, does not increase the danger from fire to the property not taken. It merely seeks to condemn a strip of land bordering on the south branch of the Chicago river of about 8900 square feet, of which more than 1100 square feet is submerged land, to provide a sufficient capacity in the river channel for carrying the required flow of 300,000 cubic feet of water per minute, the capacity being now only about 150,000 cubic feet per minute. This testimony does not appear to have been in rebuttal of anything brought out by the appellee, and as was said by this court in *Mueller* v. *Rebhan*, 94 Ill. 142, it being "a question of practice, must, to a greater or less degree, be left to the discretion of the court trying the case." But the testimony was improper because it comes under the head of imaginary or speculative damages. It may be classed as remote damages, and amounts to nothing more than a mere apprehension of danger, and under the ordinance, which only permitted the piling of lumber within fifty feet of a wood-manufactory, cannot be regarded as a real danger.

The evidence as to the location of appellant's customers at the stock yards was irrelevant as well as speculative in its character, and was properly excluded.

Appellant claims the verdict is contrary to the evidence. The jury awarded $8965 as total compensation for the land proposed to be taken,—$7395 to DuPont, the

owner of the fee, and $1570 to the Cook & Rathborne Company, the tenant and appellant, for the present worth of the rent to accrue upon the premises up to 1903, when a revaluation of the same was to be made. They also awarded the sum of $400 to the Cook & Rathborne Company for damages accruing from the temporary occupation of a portion of the premises not taken, by the Sanitary District, while replacing the dock according to its stipulation introduced in evidence, whereby the Sanitary District of Chicago agreed to build, at its own expense, a substantial dock, to be in condition substantially as good as the present dock on the property in question, and to be constructed between the first day of December, 1898, and the first day of April, 1899. Appellant says that the value of the rent due under the terms of the lease for the property actually taken was admitted by all parties to amount to $1570,—the amount awarded by the jury in their verdict.

Much of the testimony of appellant related to the amount of lumber used per month, and the *probability* of appellant being compelled to bring in lumber by rail after the close of navigation on the lake, and, if appellant had to bring in 1,080,000 feet by rail instead of by water, how much it would cost to do it each year during the lease. The testimony of appellant on the question of damage to its business depended upon this difference between freight rates by water and freight rates by rail for a period of five years *in the future,* which is contingent and speculative in character, and cannot be considered in estimating the compensation to be paid for taking this strip of land. In the case of *Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434, in which damages were claimed which would result to appellant's goods by being moved from the building, and interruption to the business of appellant by packing, moving and re-establishing his business, and the number and value of certain catalogues of the goods bought by appellant, this court used the following language (p. 437): "The general rule is, that just compen-

sation to the owner of private property taken or damaged for public use is to be measured by its fair cash market value. We said in *Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 Ill. 97 (on p. 99): 'The fair market value would always give the owner just compensation, and that is all he is entitled to receive under the law. If the lots were devoted to some particular use, and in consequence of such use had an intrinsic value, the owner, in such case, in order to get just compensation, would be entitled to recover whatever the lands were worth for the use or purpose to which they might be devoted.' (See Lewis on Eminent Domain, sec. 478.) This rule excludes all evidence as to the amount of business done or which could be done in the property, or the probable profits arising therefrom. (*Jacksonville and Southeastern Railway Co.* v. *Walsh*, 106 Ill. 253.) It is a general rule that damages to personal property, or the expense of removing it from the premises, cannot be considered in estimating the compensation to be paid." Appellant's own witnesses varied as to the difference in freight rates by rail and by water, some fixing the rate at $2 per thousand feet of lumber. One witness fixed the rate at $1.75 by boat, and said by rail that it figured up sometimes to $2.50 per thousand.

There was a conflict in the testimony as to the value of the leasehold interest. The estimates by real estate dealers varied materially. One of appellant's witnesses testified he considered that the Cook & Rathborne Company had a yearly profit of over $2000 over the $6500 it was required to pay under its lease, while one of appellee's witnesses, also a real estate dealer, testified that in his opinion the lease could not be sold in the market at a profit, and that after taking the strip that the sanitary board proposed to take, and assuming that the tenant and landlord would be paid for the actual market value, the witness thought that the leasehold interest on that part taken *would not be injured.* The jury saw the

premises, and as this court said in *Mitchell* v. *Illinois and St. Louis Railroad Co.* 85 Ill. 566, "under the statute the jury had a right to view the premises, and draw their own conclusions from such observations as well as from other testimony offered in the case." (*Chicago and Iowa Railroad Co.* v. *Hopkins*, 90 Ill. 316; *Green* v. *City of Chicago*, 97 id. 370.) With such a diversity of opinion among the real estate dealers and such a conflict in the testimony, this court would not be justified in saying the evidence does not support the verdict, and especially when the verdict is undoubtedly based upon an examination of the property by the jury as well as the other testimony in the case.

The judgment will be affirmed.

*Judgment affirmed.*