[No. 9278.   Department One.   April 21, 1911.]

NORTH COAST RAILROAD COMPANY, *Respondent*, v. KRAFT COMPANY. *Appellant*.[1]

EMINENT DOMAIN—DAMAGES—LEASEHOLDS—RENEWALS—VALUE—DETERMINATION—TERMS OF LEASE—ARBITRATION.  Where a lease provided for a renewal for five years at a rental to be agreed upon or fixed by arbitrators, at the option of the lessee, and the fee was acquired by a public service corporation, which refused to consent to an extension for longer than eighteen months, and refused at all times to agree upon the rental or arbitrate the matter, but commenced a condemnation suit to appropriate the leasehold, the court cannot, eleven months after expiration of the original term, require an arbitration at that time within one day pending a stay of the trial, and in default thereof, take evidence and fix the value of the rental, in disregard of the method prescribed in the lease, the lease contemplating an adjustment of the rent before the expiration of the original term.

SAME.  In such case, the rights of the tenant in the condemnation suit can only be protected by adhering to the view that the rent reserved in the lease continued for the renewal term, especially in view of the fact that the relator's agent demanded and collected one month's rent at such rate, and the lessee tendered the same each month, while the relator at all times refused to comply with the terms of the lease requiring it to agree upon or arbitrate the matter of the rent.

SAME—VALUE OF LEASEHOLD—EXPENSE OF REMOVAL—EVIDENCE.  In proceedings to condemn a leasehold, while the lessee's expense of moving to a new place and damage to stock and fixtures therefrom is not recoverable as specific items apart from the leasehold, evidence thereof is admissible as showing the value of the unexpired term.

SAME—RESTRICTIONS IN LEASE.  In proceedings to condemn a leasehold, the rental value of the unexpired term cannot be measured by "the highest and best use" of the premises, where the lease restricts its use to a specified business.

SAME—MEASURE OF DAMAGES TO A LEASEHOLD.  In proceedings to condemn a leasehold, the measure of damages is the difference between the rent reserved and the rental value during the remainder of the term, plus loss of profits while moving to a new location.

[1]Reported in 115 Pac. 97.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered January 17, 1910, upon findings in favor of the plaintiff, after a trial on the merits before the court without a jury, establishing the value of a leasehold interest in real property, in proceedings to condemn land for railroad purposes. Reversed.

*Post, Avery & Higgins,* for appellant.

*Danson & Williams* and *Hamblen & Gilbert,* for respondent.

Gose, J.—This is an appeal from a judgment establishing the value of a leasehold interest in real property, entered at the suit of the respondent, a public service corporation. The appellant, defendant below, is a corporation engaged in the wholesale and retail harness, saddlery, and manufacturing business. In November, 1903, the Northwestern & Pacific Hypotheekbank leased to the appellant a brick building in the city of Spokane, for the term of five years, beginning January 1, 1904, and ending on the 31st day of December, 1908, at a monthly rental of $175 per month, payable monthly and in advance upon the 1st day of each month during the term. The lease contained the following provision:

*"Provided, however,* That the said lessee, its successors and assigns, shall have the privilege of renewing said lease for the term of five years from the expiration thereof upon giving written notice at least ninety (90) days before the said expiration, that they desire so to do, at such rental as may be mutually agreed upon by the parties hereto, their successors or assigns, and in case they are unable to agree upon the rental to be paid, then the amount of said rental shall be fixed by arbitrators. The method of which said arbitration shall be as follows: One arbitrator shall be chosen by each of the two said parties hereto, and if the two persons so chosen shall be unable to agree, then a third person shall be chosen by each of the two said arbitrators, and the decision of the majority of the three arbitrators shall be binding upon the parties hereto."

It is further provided, that the lessors may reenter and repossess themselves of the premises if the rent is not paid on the day stipulated in the lease or for default in any of the covenants; that the lessee shall not assign the lease or sublet the premises without first having obtained the written consent of the lessor; that the lessee will not make, or suffer to be made, any change or alteration in the leased premises, either external or internal, without first obtaining the written consent of the owner; that it will not allow the same to be used for any illegal or immoral purposes, but that it "will use the same as a wholesale, retail, and manufacturing harness and saddlery or similar business." On the 22d day of October, 1907, the respondent obtained a contract for the purchase of the leased premises, and acquired the fee on April 20, 1909. On the 24th day of September, 1908, the appellant gave notice to the respondent that it exercised its privilege to renew the lease, conformably to the stipulation, for the period of five years from and after December 31, 1908, and that it

"Begs to advise you, and each of you, that it will undertake to make an agreement with that party who is successor in interest of the lessor, or who by virtue of any contract with the owner of the fee simple title to said property, has the right and power so to do, as to the rentals to be paid by the undersigned, and that upon failure so to do, that the undersigned will promptly name an arbitrator for the purpose of undertaking to fix the amount of such rental, as in the lease provided. The undersigned requests to be promptly notified of the name of the person or corporation who has the right, power and authority to agree upon the amount of such rental, and in case of failure so to agree, to name an arbitrator for and on behalf of the lessor. The undersigned further begs to advise you that its representative will meet the person who has the right, power and authority to agree upon the rental on behalf of the lessor, or the representative of such person or corporation, at any time and place to be named by them, for the purpose of undertaking to mutually agree upon the amount of such rentals."

The respondent disregarded the notice until after the expiration of the original term, and until after January 8,

1909. On January 25, 1909, the respondent, through its attorneys, addressed the following letter to appellant:

"January 25, 1909.
"To the A. A. Kraft Company,
    "Spokane, Washington.
        "Gentlemen:  As heretofore stated to you orally the undersigned, The North Coast Railroad Company, is the owner of lot 1 and part of lot 2 in block 3 of Resurvey and Addition to Spokane Falls (now Spokane), and of the building situate thereon, it having purchased same for railroad purposes.  On account of its needing said property for railroad purposes it cannot renew the lease, which you heretofore held and which expired on December 31st, 1908, for a longer period than eighteen months from January 1, 1909. It is willing to renew said lease for said time and to allow you to occupy said premises at a reasonable rental, said rental to be agreed upon between it and your company, and in case you cannot agree it will appoint an arbitrator, as provided in said lease, who, with such arbitrator as you shall name, shall find the reasonable rental value of said premises for said period as provided in said lease.  This will give you ample time to secure another location and building for your use."

In response to this letter, the appellant advised the respondent, in writing, to conduct its negotiations with its attorneys, Messrs. Post, Avery & Higgins.  This action was commenced in April, 1909.  The order of necessity having been entered, the trial of the question of the value of the leasehold interest commenced on November 29, 1909.  The rental value for the renewal period of five years had not then been fixed by any of the methods agreed upon in the lease, although eleven months had lapsed since the expiration of the original term.  On January 2, 1909, the appellant paid to the agent of the respondent, who had theretofore collected the rent, the sum of $175.  This check was cashed by the agent, and its check for the same amount was sent to appellant on January 8.  The appellant returned the check, and thereafter tendered to the respondent $175 on the first of each month.

Before writing the letter of January 25, there was some conversation about the rent between the respondent's attorneys and the appellant, and between the former and the attorneys for the latter. The respondent, however, took the position in each of the conversations, as it did in its letter, that it would not participate in fixing the rent for a renewal term longer than eighteen months from January 1, 1909. The appellant stated that it considered that the payment of the rent on January 1, 1909, fixed the rental value of the premises at $175 per month for the renewal term, but expresly directed the respondent to take the matter up with its attorney as it did not care to talk about it. Pending the trial, the respondent's attorney moved for a stay of proceedings, until "appraisers could be appointed and the rental value determined by them." In passing upon the motion, the court stated that he was "inclined to grant a stay for a very short time so that the trial can proceed tomorrow, with a view that the parties agree upon arbitrators to fix the rental value, if they cannot agree among themselves." The attorney for the respondent then stated that he would name an arbitrator "at once; by morning, if not sooner." Thereupon the appellant's attorney inquired: "Your Honor will grant a stay until tomorrow morning?" and the court replied: "I think not longer than the afternoon, so as to proceed at that time." The attorney for the appellant then stated that he did not think that he was required to state in open court at that time whether he would name an arbitrator. The court then adjourned for the day. Upon convening of court the next day, the appellant's attorney stated

"That his understanding of plaintiff's motion and the court's ruling was that arbitrators should be appointed at this time to determine the amount of rent to be placed in the lease as though the arbitrators had met before January 1st, 1909, and for the purposes of this law suit only, and not with the intent of allowing defendant to remain in possession for the period of five years, as provided in the lease, and as the fact was that the failure to appoint arbitrators was

wholly the fault of plaintiff and plaintiff's attitude clearly indicates that it did not desire arbitration but was satisfied with the old rent and had accepted the same, that he believed that it was improper for the court to ask defendant to now arbitrate this question for the purposes of this law suit and stay proceedings for that purpose, and defendant would decline to name an arbitrator at this time."

The respondent made no reply, and the trial proceeded. The respondent, in moving for a stay and in its offer in open court to name an arbitrator, did not state whether it adhered to its former policy of fixing the rent for eighteen months only or for five years. It is apparent, from the remarks of the appellant's counsel, that his understanding was that the offer to arbitrate did not contemplate the fixing of the rent for five years. If he misconstrued the motion, it was the respondent's duty to so advise him. It did not do so. The court then, over the objections of appellant, proceeded to, and did, hear the testimony of witnesses as to the rental value of the property for the renewal term. It is apparent that, after a delay of eleven months and the respondent's refusal to meet the appellant's demand for the appointment of arbitrators to fix the rent for the renewal period, it could not require the appellant to proceed with such haste in the naming of an arbitrator and in having the question of rental value passed upon by them. The time allowed by the court was not sufficient. A reference to the provisions of the lease makes it clear that it contemplates an adjustment of the rent for the new term before the expiration of the original one. This is made apparent by the clause authorizing a reentry for a failure to pay the monthly rent in advance. At the close of the case, the court found the facts as follows:

"(1)  That the fair rental value of the premises occupied by the A. A. Kraft Company for the term of five years commencing January 1, 1909, was $375 per month.

"(2)  That the fair rental value for the remainder of the term from this date is $425 per month.

"(3)  That the loss of profits during the time required

by said The A. A. Kraft Company to remove to another location is the sum of $80.

"(4)    That the damages which said The A. A. Kraft Company is entitled to recover of and from said petitioner in this condemnation proceeding is the difference between the rental value of said premises per month on January 1, 1909, and on the date of the trial, November 29, 1909, or $50 a month for the unexpired term of 47 months being the sum of $2,350, and the loss of profits during the time of removal, or $80, making a total of $2,430."

and entered a judgment in accordance with the findings.

The appellant contended at the trial, and contends here, that the refusal of the respondent to fix the rent for the renewal term in accordance with the provisions of the lease and its notice, and the acceptance of the rent on January 2, 1909, at the rate agreed upon in the original lease, fixed the rental which it was required to pay for the renewal term. The respondent's position is that, in view of all the facts stated, it was competent for the court to fix the rental value of the property upon opinion evidence submitted for that purpose. The evidence does not show any express direction to the agent to collect the rent on January 1, 1909. Nor does it show that it had been directed not to collect it as it had theretofore done. The fact that it went to the appellant's place of business and demanded and received the rent is a circumstance to be considered in connection with the respondent's delay in meeting the appellant's demand of September 24 for an adjustment of the rent for the new term. These facts and the old lease were the only competent evidence before the court of the rental value of the property for the five-year term beginning January 1, 1909. The lease provides the manner and form of fixing the rent. The respondent at all times refused to meet the request of the appellant for an adjustment conformably to the lease. It acquired the property subject to the lease, and it was its duty to proceed in accordance with its terms. The fact that it desired to devote the property to a public use within the five years does not

change the rule or dispense with its duty in the premises. The renewal of the lease would not prevent the appropriation of the property to a public use. 2 Lewis, Eminent Domain (3d ed.), §§ 414-416. This rule is based upon the principle that the appropriation of the property of another to a public use is an exercise of sovereignty which cannot be relinquished by contract. The respondent at all times refused to agree upon the rent, or to name an arbitrator to fix it for a longer term than eighteen months. In other words, it proceeded to appropriate the property in utter disregard of the contract. If it had made a *bona fide* effort to comply with the contract, and had named an arbitrator, and the arbitration had been fruitless, or if the failure to arbitrate had been due to the refusal of the appellant to meet it upon the terms of the lease, then the power of the court to determine the rent at its suit, upon opinion evidence, could not be questioned. The rule in such cases rests upon the principle that the court will determine the facts at the suit of the innocent party, upon the best evidence obtainable; but the court cannot disregard the contract in a suit by the wrongdoer, and make for the parties a contract materially different from the one they made for themselves. These views have abundant support in the adjudged cases.

In *Sherman v. Cobb*, 16 R. I. 82, 12 Atl. 232, it was held that, where a lease provides that upon its renewal the rent for the extended term shall be fixed by appraisers, the landlord cannot maintain an action for the recovery of the reasonable rental value until he has exhausted the methods provided in the contract. Where a contract provides for a method of adjusting all differences that may arise between the parties, that method must be pursued before either party can resort to the courts for an adjustment. *Zindorf Construction Co. v. Western American Co.*, 27 Wash. 31, 67 Pac. 374; *Hughes v. Bravinder*, 9 Wash. 595, 38 Pac. 209; *Lidgerwood Park Water Works Co. v. Spokane*, 19 Wash.

365, 53 Pac. 352. In *Ryder v. Jenny*, 2 Rob. (N. Y. Sup'r Ct.), 56, a lease with covenants for renewal expired on the 25th day of April, 1856. The lease provided that the landlord would execute a renewal of the lease for the term of twenty-one years, "at such annual rental as should be agreed upon by the parties;" and provided for a mode of appraisement in the event that they could not agree upon the rent. The tenant continued in possession until February, 1861, without paying any rent, before asking for a renewal of the lease. On January 30, 1862, an appraisement was made by appraisers chosen by the parties conformably to the lease, and on July 21 following, a lease was tendered. The rent under the old lease was $100 per year. The appraisers fixed the rental value at $140 per year. Upon these facts it was held that, until the rent was determined and a lease tendered, the tenant was only liable for the amount of rent previously paid, and that "the lease was not tendered until July, 1862, and the increased rent only became payable at that time."

The respondent relies upon the following authorities: *Hegan Mantel Co. v. Wood*, 22 Ky. Law 427, 57 S. W. 929, 17 Am. Dec. 159; *Wright v. Hardy*, 76 Miss. 524, 24 South. 697; *Andrews v. Marshall Creamery Co.*, 118 Iowa 595, 92 N. W. 706, 96 Am. St. 412, 60 L. R. A. 399; 24 Cyc. 1008; *Kaufmann v. Liggett*, 209 Pa. St. 87, 58 Atl. 129, 103 Am. St. 988, 67 L. R. A. 353; Jones, Landlord and Tenant, § 346; *Uhrig v. Williamsburg City Fire Ins. Co.*, 101 N. Y. 362, 4 N. E. 745; *Lowe v. Brown*, 22 Ohio St. 463, and *Grosvenor v. Flint*, 20 R. I. 21, 37 Atl. 304.

They do not support its contention. The *Wood* case announces the rule that a reasonable delay in the appraisement does not debar either party from thereafter having the property appraised according to the lease. In the *Wright* case, there was a stipulation for the selection of appraisers who should fix the rental value of the property in the event of a disagreement between the parties. The lease further pro-

vided, "that should either party fail or refuse to make an appraisement, or to select a referee to appraise said lots, the other party may cause said lots to be appraised by three disinterested freeholders to be selected by said party." There had been no appraisement prior to the commencement of the action. It was held that, "The right to a revaluation has not been forfeited or waived by its not having been made or insisted upon earlier," and that a court of chancery may fix the valuation. It does not appear from the opinion which party was in default. However, under the clause in the lease which we have quoted, the parties were equally at fault, as the power was ample in either to have the appraisement made. The *Andrews* case holds that, where the tenant has affirmatively indicated his election to renew, he has done all that is necessary to create a renewal. The same rule is stated in 24 Cyc. 1008, and it is further said that, "while the execution of the lease is not necessary, . . . it may nevertheless be required by either of the parties after the election has been exercised." The *Kaufmann* case is an instructive one. There the lease provided that the lessees should have the privilege of a renewal. It also provided that the rental, in event the lessees elected to renew, should be fixed by arbitrators selected in a specified way; also that, if the arbitrators and umpire failed to agree within a fixed time, then others should be chosen in the same manner. There was no provision in the lease covering the contingency of the failure of the second set of arbitrators to agree. The lessees exercised their privilege of renewal, and gave the stipulated notice. Both sets of arbitrators failed to agree. The landlords then gave notice to the lessees to surrender possession of the premises. Thereupon the lessees filed a bill in equity, praying that the court determine the amount of rental to be paid under the renewal. The court said:

"But that in cases of renewal leases, the weight of authority clearly favors the view that the tenant in such a case has a quasi proprietorship; a right, lacking merely a valua-

tion; and that the grossest inequity would be worked, should he lose his right through a failure upon the part of the arbitrators to fix a valuation. While, therefore, a court of equity will not undertake to compel an arbitration, which it cannot control, it will in such case make an appraisement itself, or direct it to be done by its own officer, and will thereafter enforce specific performance of the contract, upon the terms so found."

"In case the rent under a lease is to be fixed by appraisal, then, if the referees appointed under the contract or lease to make the appraisal are unable to make it, the lessor will be entitled to sue for a reasonable rent. This right to sue depends upon a condition precedent, namely, his having tried to get the rent fixed in pursuance of the terms of the lease, and failing to do so." Jones, Landlord and Tenant, § 346.

In the *Uhrig* case, the court said:

"Under the arbitration clause, it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith so as to defeat the real object of the clause, it absolved the other party from compliance therewith; and if either party refused to go on with the arbitration, or to complete it, or to procure the appointment of an umpire so that there could be an agreement upon an appraisal, the other party was absolved."

The *Lowe* and *Grosvenor* cases announce the rule we have stated, viz., that when the arbitrators have failed to agree, or when one party refuses to proceed in conformity with the contract, the court, at the instance of the innocent party, will determine the question of value. We do not deem it necessary to follow counsel for the respondent in the discussion of the technical differences in meaning between the words "renew" and "extend." The appellant gave the requisite notice, and its right to hold for the extended term thereby became fixed. The only matter left for determination was the appraisement of the rental value of the property. We think that the respondent's attitude upon that question has been such that the rights of the appellant can only be protected by

adhering to the view that the rent provided in the lease con-
tinued for the renewal term. Aside from the lease and the
circumstances of the collection of the rent and the delay of
the respondent, there was no competent evidence before the
court upon the question of the rental value of the property on
January 1, 1909.

Evidence was admitted, over the objection of the respond-
ent, showing the expense of moving the machinery, stock, and
fixtures to a new place of business, the damages to the same
resulting from the removal, and the value of the fixtures lost
because not removable. These items were not allowed as
specific or independent damages. The refusal to allow them
is assigned as error. 2 Lewis on Eminent Domain (3d ed.),
§ 728, says:

"But the damages to personal property, or the expense of
removing it from the premises, cannot be considered in esti-
mating the compensation to be paid."

A large number of cases are cited as supporting the text.
In *Pause v. Atlanta*, 98 Ga. 92, 26 S. E. 489, the rule an-
nounced by Mr. Lewis was applied to the owner of a leasehold
in real estate. The court said:

"The measure of her damages is the injury to her property
which is injuriously affected by the public improvement. In
arriving at that damage, neither the profits of the business
conducted on the premises, nor the cost to the tenant of fix-
tures and improvements placed therein, nor the articles pur-
chased for the purpose of enabling the lessee to conduct the
business, nor diminution in the value of fixtures, improve-
ments, or articles such as are removed by the lessee, can be
recovered as damages, but the increased value of the premises
for rent in consequence of the putting in of such fixtures and
improvements may properly be considered in computing the
damages to the leasehold estate."

"Injury to business, loss of profits, inconvenience to the
owner, damages to personal property or the expense of re-
moving it, are not to be estimated as distinct elements of

damages." *St. Louis, K. & N. W. R. Co. v. Knapp-Stout & Co.*, 160 Mo. 396, 61 S. W. 300.

See, also, *Cook & Rathborne Co. v. Sanitary Dist. of Chicago,* 177 Ill. 599, 52 N. E. 870.

We think the evidence was admissible, not as a basis for a specific claim, but as showing the value of the unexpired term. *Schuykill River E. S. R. Co. v. Kersey* (Pa.), 19 Atl. 553; *Braun v. Metropolitan West Side El. R. Co.*, 166 Ill. 434, 46 N. E. 974; *McMillin Printing Co. v. Pittsburg etc. R. Co.*, 216 Pa. St. 504, 65 Atl. 1091; *Metropolitan West Side El. R. Co. v. Siegel*, 161 Ill. 638, 44 N. E. 276. The appellant relies upon the following cases: *Patterson v. Boston*, 23 Pick. 425; *Jacksonville & S. E. R. Co. v. Walsh*, 106 Ill. 253; *Commissioners of Parks and Boulevards v. Moesta*, 91 Mich. 149, 51 N. W. 903; *Grand Rapids etc. R. Co. v. Weiden,* 69 Mich. 572, 37 N. W. 872; *Philadelphia & R. R. Co. v. Getz*, 113 Pa. St. 214, 6 Atl. 356. These cases support the contention that such losses are recoverable. "Damages" in law, means an adequate compensation for the loss suffered or the injury sustained. The rule itself is well settled and simple of statement, but its application is often attended with difficulty, on account of the great diversity of circumstances surrounding different cases where the principle is sought to be applied. As was said in *Seattle & M. R. Co. v. Scheike,* 3 Wash. 625, 29 Pac. 217, 30 Pac. 503:

"It is difficult, if not impossible, to lay down a rule of universal application as to what may be considered as elements of damage, as the equities of the parties must more or less depend upon the particular facts and circumstances of each case."

This is particularly true as applied to a leasehold which may have no market value in excess of the rent reserved. The appellant is entitled to be paid the value of the unexpired term. The items under consideration are but constituent elements of that value. In principle, and according to what we consider the better authority, they are not recoverable as

something apart from the leasehold interest. They form an essential part of its value. There is a material conflict in the evidence offered by the respective parties. The court could have found the rental for the remainder of the term either more or less than $425 per month, and the finding would have had abundant support in the evidence. The court saw the witnesses in action and viewed the premises, and we are not disposed to disturb the finding as to rental value for the unexpired term.

The appellant's contention that evidence should have been admitted as to the rental value of the unexpired term, measured by "the highest and best use" of the premises, cannot be sustained. It is correct as a general principle. The lease, however, limits the appellant's use to "wholesale, retail, and manufacturing harness and saddlery or similar business." It further prohibits the use of the premises for certain specific purposes. The question for the court to determine, and the one which it did determine, was the value of the leasehold for the unexpired term, in view of the restrictive clause in the lease.

Error is assigned in the admission and exclusion of certain testimony respecting adjoining property owned by the respondent and the use to which it would be devoted. The court gave both parties wide latitude in presenting the facts tending to show the value of the leasehold. The case was tried to the court, and as we have said, the finding as to the value of the unexpired term is supported by competent evidence.

The judgment is reversed, with directions to enter a judgment in favor of appellant for a sum equal to the difference between $175 and $425 per month for the remainder of the term, plus the $80, loss of profits.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.