## City of Chicago, Appellee, v. The Chicago River and Indiana Railroad Company, Appellant.

### Gen. No. 39,823.

Opinion filed April 11, 1938.

Sidney C. Murray and Harold E. Christensen, both of Chicago, for appellant.

Barnet Hodes, Corporation Counsel, for appellee; Joseph F. Grossman, First Assistant Corporation Counsel, and Alexander J. Resa, Assistant Corporation Counsel, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

The railroad company appeals from a judgment in favor of the plaintiff in the sum of $2,000 entered upon the finding of the court. The action was based upon the alleged obligation of the defendant to pay compensation at the rate of $400 a year for license granted under an ordinance of January 11, 1922, by which defendant was permitted to construct, maintain and operate railroad switch tracks at grade across West 47th. street and West 43rd street, at points described in the ordinance. Section 2 of the ordinance provided that the authority granted should cease in 20 years, should at all times be subject to modification, amendment or repeal without consent of the grantee, and that: "In the event of the termination of the authority or privileges hereby granted by the repeal of this ordinance, the grantee by the filing of the written acceptance hereinafter mentioned, shall be understood as consenting that the City shall retain all money it shall have previously received from said grantee under the provisions of this ordinance, said money to be considered and treated as compensation for the authority, permission and privileges enjoyed from the date of the passage of this ordinance until such repeal." Section 2 also provided that by the filing of the written acceptance of the ordinance, "Said grantee hereby agrees to elevate at its own expense and without any expense, damage or liability to the City of Chicago of any kind whatsoever,

the switch tracks herein authorized, upon notice so to do from the Commissioner of Public Works, or failing so to do, shall within sixty (60) days after being notified to that effect by the Commissioner of Public Works, remove the switch tracks herein referred to. Said switch tracks, if elevated, shall be elevated under the direction and supervision and to the satisfaction of the Commissioner of Public Works, and the construction and material used in the elevation of said switch tracks shall be of the same character as that used in the construction of the main tracks with which said tracks connect.''

Other provisions of the ordinance were that during its life the grantee should keep the portion of the streets occupied by the switch tracks in good condition and repair and safe for public travel, to the satisfaction and approval of the commissioner of public works; that ''At the termination of the rights and privileges herein granted, by expiration of time or otherwise, the said grantee shall forthwith restore such portion of said streets occupied by said switch tracks to a condition safe for public travel, similar to the remaining portion of said streets in the same block, to the satisfaction and approval of the Commissioner of Public Works.''

If the grantee failed so to do the city might cause the work to be done, charging the costs and expenses to the grantee.

Other provisions were that the operation and maintenance of the switch tracks should be subject to all existing ordinances of the city then in force or which might thereafter be in force relating to the use and operation of the switch tracks and railroad tracks.

The provision for the payment of compensation was contained in section 5 of the ordinance, which provided that the grantee agreed to pay as compensation ''for said switch tracks'' the sum of $400 per annum, pay-

able annually in advance; that if default was made the mayor might immediately revoke the privileges granted, or the ordinance be repealed by the city council.

Section 6 provided that the grantee should execute a bond in the sum of $10,000 before doing any work by virtue of the authority granted.

Section 7 provided the ordinance should take effect from and after its passage provided that a written acceptance should be filed with the city clerk within 60 days.

The evidence shows without contradiction that pursuant to the terms of this and other ordinances of the city and pursuant to the order and directions of the commissioner of public works, the tracks of the defendant railroad at 43rd and 47th streets were elevated prior to January, 1929, and that prior to that time these switch tracks (pursuant to such ordinances and directions) were removed from the streets and similar switch tracks placed upon the elevated right-of-way of the roads. The evidence also shows that all compensation which became due under the ordinance up to that time was paid in full by the railroad company.

It is the contention of defendant that upon the removal of these switch tracks from the surface of the street and the reconstruction of the same upon the elevated roadbed of the railway, the obligation of defendant to pay compensation under the terms of this ordinance ceased, although the 20 years declared to be the life of the ordinance had not expired. It was also contended that by a later amendment to a prior ordinance by which defendant was required to elevate its tracks at the streets named, this ordinance of January 11, 1922, in so far as it required the payment of compensation, was repealed, and that after the elevation of the tracks that obligation wholly ceased.

The determination of either question requires a consideration of the three ordinances in evidence dealing

with the subject matter of the elevation of these tracks. The ordinances in question were all special as distinguished from general ordinances. The first was passed April 4, 1912, its provisions being applicable not only to defendant but to other railroads having tracks in the same vicinity. This ordinance required that the railroad should elevate its roadbed and tracks at the places indicated therein, prescribing the manner of elevation and the extent thereof specifically. Paragraph 7 of the ordinance of April 4, 1912, provided that nothing in the ordinance should prevent the different railroad companies from changing the location of their tracks by mutual agreement as they might deem necessary, that no change of location should be made that would prevent the operation of the grade tracks as contemplated in the ordinance; that the companies were authorized and permitted to construct elevated embankments upon their rights-of-way and to maintain and operate thereon such number of railroad tracks as they might deem necessary or convenient for the transaction of their business, and to carry such additional tracks over all intervening streets, avenues and alleys in the same manner as therein provided for existing tracks. Section 4 provided that subways should be constructed beneath certain streets. Section 12 that the companies should begin the actual work of construction not later than January, 1913, and diligently prosecute and complete the same by December 31, 1918, unless prevented by certain causes enumerated. The ordinance was to take effect from and after its passage. All ordinances and parts of ordinances in conflict with its provisions were repealed.

The evidence shows affirmatively that nothing whatever was done by the railroad companies in the way of the elevation of their tracks, as provided by this ordinance, prior to 1926. In the meantime, however, the ordinance of January 11, 1922, as already described, had been enacted and accepted by defendant. In 1926

the council passed an amendment to the ordinance of April 4, 1912, in particular amending paragraph 1 of section 12 to provide that the railway companies should diligently prosecute the work of construction to completion and complete the elevation of their tracks by December 31, 1927, and that in the event defendant, Chicago River and Indiana R. Co., with other railroads named, should agree among themselves to separate the grades of their respective tracks at places named therein, they were "permitted to make such alterations in their structures and embankments and tracks on their right of way as may be necessary to permit the completion of all of the terms of this ordinance; all such changes and alterations to be subject to the approval of the Commissioner of Public Works of the City of Chicago, so far as they may affect any public streets or alleys." The amendment also repealed all ordinances or parts of ordinances in conflict with the provisions of this ordinance as amended.

In 1926 defendant and other railroads began the work of elevating their tracks as required by these ordinances. They finished that work in 1929, separating the grades of a number of railroads over several streets which included 43rd and 47th streets. All this work was done under the terms and provisions of the ordinance of April 4, 1912, as amended by the amendment thereto in 1926. An examination of all the ordinances dealing with this matter discloses that there was no provision in any one of them whereby compensation was to be paid for laying any tracks or switch tracks on the right-of-way of defendant, when the same were elevated. Pursuant to the terms of these ordinances switch tracks laid at grade were removed and never replaced at grade in the street. Indeed, it can hardly be said that the same switch tracks were ever reconstructed on the elevation. Defendant in conforming with the requirements of these ordinances has expended altogether about $850,000. Was it the intention

of the parties to the ordinance of January 11, 1922, that defendant should be required to pay compensation after the removal, by direction of the City and in conformity with the ordinance, of the switch tracks which the ordinance gave them the permission to construct and operate? Keeping in mind the evident purpose to the accomplishment of which every provision of all these ordinances were directed, we think the answer to that question must be in the negative. While the ordinance provided that the permission and authority granted should cease and determine 20 years from the date of its passage, there are provisions in it indicating that it was within the contemplation of the parties that compensation should not necessarily be paid during all that time. This is indicated by the fact that the entire amount to be paid is separated into equal annual instalments, thus indicating that payments might cease with any instalment. Section 2 of the ordinance indicates it was the intention of the parties that the privileges granted and the payment of compensation therefor should be concurrent and correlative. It provides: "In the event of the termination of the authority or privileges hereby granted by the repeal of this ordinance, the grantee by the filing of the written acceptance hereinafter mentioned, shall be understood as consenting that the City shall retain all money it shall have previously received from said grantee under the provisions of this ordinance, said money to be considered and treated as compensation for the authority, permission and privileges enjoyed from the date of the passage of this ordinance until such repeal."

When, by the provisions of this and other ordinances, the privilege of maintaining switch tracks at grade ceased and determined, the purpose of the ordinance had been accomplished. The consideration upon which the compensation was based failed and the obligation to pay the compensation ceased. When the right to occupy the surface of the street was ended the obli-

gation to pay compensation for the occupation also ceased and determined.

The law applicable is stated in 37 Corpus Juris, p. 288, sec. 189:

"A license may be terminated by revocation by the licensor; by the death of either party; by the accomplishment of its purpose; by the destruction of the subject matter; by a taking of the premises under the law of eminent domain; by a sale of the premises under an execution against the licensor; by the licensor losing title by the continued adverse possession of another; by the expiration of the time fixed for the existence of the license; by abandonment or nonuser by the licensee."

It is evident from all the evidence in this case that the purpose for which this license was issued ended with the elevation of the railroad tracks; that when, under the provisions of this and other ordinances and by direction of the commissioner of public works of the city, the switch tracks were removed from the space theretofore occupied by them, the obligation to pay compensation for the right or license which had been taken away from the defendant ceased. It is not, as we see it, a question of whether the license was expressly revoked by the enactment of another ordinance. The City, under the terms of this ordinance, might repeal it or amend or modify it without the consent of the defendant railroad company. Every ordinance in evidence indicates the wish of the City and its purpose to get these tracks out of the street and off the street as soon as possible. We hold that when that was accomplished and the switch tracks were removed the right of the City to collect compensation under the ordinance ceased. We hold this was the intention of the City and the railroad company as disclosed by the terms of these ordinances. We think, too, that the ordinance of April 4, 1912, as amended in 1926, cov-

ered the whole subject matter and was inconsistent with the payment of compensation after the removal of the switch tracks. *Booth v. Town of Carthage,* 67 Ill. 102. The effect of that amendment was to repeal, if not expressly at least by implication, section 5 of the ordinance of January 11, 1922, requiring the payment of compensation. *Harrison v. People,* 195 Ill. 466; *Cook & Rathborne Co. v. Sanitary District,* 177 Ill. 599; *People ex rel. Williams v. City of Chicago,* 209 Ill. App. 142. At any rate it is altogether contrary to reason that after taking away the license upon which the payment of compensation was based, plaintiff should continue to collect compensation.

The judgment is reversed.

*Reversed.*

O'CONNOR, P. J., and McSURELY, J., concur.